Rick J. Sutherland (USB #3162)
M. Christopher Moon (USB #14880)
JACKSON LEWIS, PLLC
222 S. Main Street, #500
Salt Lake City, Utah 84101
Telephone: (801) 736-3199
Email: Rick.Sutherland@jacksonlewis.com
       Chris.Moon@jacksonlewis.com

Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| THOMAS E. PEREZ, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,<br><br>PLAINTIFF,<br><br>v.<br><br>PARAGON CONTRACTORS CORP. AND BRIAN JESSOP, individually,<br><br>DEFENDANTS. | Case No. 2:06 CV 00700<br><br><br>**DECLARATION OF BRIAN JESSOP** |

I, Brian Jessop, state and declare as follows:

1. I am an individual residing in Washington County, State of Utah.

2. I am over the age of 18.

3. I have personal knowledge of the facts set forth in this Declaration. If called to testify, I could and would testify as follows.

4. I am the owner and President of Paragon Contractors Corporation which is the named defendant in this action. Paragon Contractors Corporation (Paragon) is engaged in the construction and building industry. Other than the contract it entered with the Southern Utah Pecan Ranch (SUPR) relating to the SUPR nut farm in Hurricane, Utah, Paragon has not

1

engaged in any other agricultural endeavors. All of its work outside of SUPR has been in the construction industry. Paragon's gross annual earnings in 2011 from its construction business were approximately $4.5 million. Receipts associated with SUPR for that year were probably around $90 thousand.

5. The 2007 Permanent Injunction underlying the request for contempt in this case arose entirely out of Paragon's construction related activities, involving no agricultural undertakings at all. Rather, one of Paragon's employees had brought an underage family member to work with him on a roofing construction project. The Wage and Hour Division of the Department of Labor (DOL) found a sixteen year old boy hauling boards on the construction job. The DOL contended that the work involved a hazardous activity because the boards were associated with roofing operations. In order to avoid a protracted and expensive dispute, and to confirm my willingness to avoid issues with child labor laws, Paragon and I agreed to entry of the 2007 Permanent Injunction. Other than this present dispute about the 2012 SUPR pecan gleaning activities, Paragon has not engaged in any actions that have led to allegations of child labor violations.

6. Sometime prior to 2011, Paragon was approached to enter into a contract with SUPR to conduct the nut harvest for the ranch. Initially, Paragon's involvement was only to undertake the mechanical harvest utilizing tractors to shake the trees causing the nuts to fall into large collectors attached to the tractors and then to bag and store the harvested nuts. To do this work Paragon used one of its own construction employees, Keith Dutson, who, to my knowledge, had no prior experience with pecan harvesting.

7. Beginning in sometime around 2011, Paragon was asked to take on all the maintenance of the ranch as well. Because neither agriculture generally nor nut farming specifically was part of Paragon's core business, I turned to Dale Barlow to undertake this expanded role.

8. It was my understanding that Mr. Barlow had developed a relationship with the manager of SUPR, and that he was familiar with the property and its operation. Although he had never been an employee of Paragon, I understood that he had previous experience working in orchards for many years.

9. Dale Barlow, the manager of SUPR and I met to discuss the expanded role being requested of Paragon. We addressed SUPR's request for experienced management of the farm and Dale Barlow's qualifications to do that work. I felt confident in Mr. Barlow's ability to undertake the responsibility of caring for the SUPR farm, and it seemed to me that SUPR did as well. In view of Mr. Barlow's willingness to do the work, I agreed for Paragon to assume the additional duties beginning in around 2011. I relied on and deferred to Mr. Barlow to care for the pecan farm.

10. I considered Paragon's seasonal contract with SUPR to be completed when the mechanical harvest was finished and the nuts generated from that effort were bagged and placed in the storage shed. As a result, as far as I knew, Dale Barlow discontinued any further work for Paragon under the yearly contract on SUPR after that time.

11. While the work done by Mr. Dutson and Mr. Barlow at SUPR was the same with respect to the mechanical harvest, Mr. Barlow was also responsible for the general care and maintenance of the farm which duties Mr. Dutson did not perform.

12. Neither I nor Paragon directed or controlled Dale Barlow's efforts at SUPR. No one at Paragon had the knowledge or expertise to do so. Even Keith Dutson had ceased working for Paragon by December of 2010. Nor did Paragon control the means and manner of Mr. Barlow's performance of the tasks he undertook at SUPR. He set his own schedule and communicated only sporadically with me. Sometimes we would not even talk for months. When any concerns

were brought to my attention by SUPR, I simply forwarded them to Mr. Barlow and he addressed them directly with SUPR.

13. Mr. Barlow set his own work hours and determined what work was to be done as well as how to do it. When he needed assistance on the ranch, he was free to obtain whatever help he needed himself. Paragon did agree to supplement with additional persons to help during busy times as needed. When Mr. Barlow did request assistance, whenever possible Paragon sent Thomas Jessop to help, but from time-to-time, Paragon would have a construction worker returning from a job site stop by the pecan farm to help. When Paragon did send help to Mr. Barlow, he directed their work.

14. I considered Paragon's relationship with Mr. Barlow to be that of an independent contractor just as the many subcontracts Paragon regularly enters into related to its construction work. There were no traditional employee benefits involved and the agreement as I recall was that Mr. Barlow would be paid a lump sum at the conclusion of the season. The agreement was for one season at a time and could be terminated by either Mr. Barlow or by Paragon at any time or simply not renewed. As far as I am aware, the work at SUPR was not full time.

15. To my knowledge, all of the equipment used on the ranch was either owned by SUPR or provided by Mr. Barlow. Paragon did not furnish equipment. Paragon's core business is construction and it had no experience with agricultural or nut farm operations or maintenance. Mr. Barlow, on the other hand, had previous general orchard experience as well as specific familiarity with SUPR. Paragon did not have access to the ranch. As far as I know, all of the activities involved here occurred on SUPR property. None of the alleged violations took place on any property of Paragon.

16. Although some FLDS family members had been picking up nuts off the ground at SUPR even prior to Paragon's involvement, I was not informed of what they did with those nuts until after the 2012 gleaning was over. It was only after the 2012 gleaning activities were concluded and the investigation by the Department of Labor had commenced that Dale Barlow told me of the arrangement for the families to leave half of the nut residue that they collected at SUPR. Before that time I was unaware of this fifty percent understanding and neither I nor Paragon ever discussed or reached agreement with anyone regarding this arrangement.

17. Paragon was not involved with or present during the gathering of nuts and was unaware of the actual individuals who assisted with the nut gleaning. Paragon was not involved in inviting, scheduling, providing access for, or managing, them. Paragon did not employ any of the gleaners and did not maintain any employment records for them. Paragon did not hire or fire any of the individuals, and did not supervise or control work schedules or set their conditions of employment.

18. Paragon did not and could not have assigned the children to perform additional work projects for Paragon as they were too young and inexperienced to work in Paragon's construction business and Paragon does not employ minors.

19. Nor did Paragon have any authority or ability to determine these families' working parameters or to subject them to discipline or discharge. None of the buckets and bags used by the families was provided by Paragon, nor did Paragon furnish any equipment, tools, restroom facilities or other items. The nut gathering did not take place on Paragon's property and was not part of its core business. Paragon did not ever promise to compensate any of them and did not provide wages, sick leave, vacation, benefits or tax withholdings.

20. As far as I know, the nut gathering occurred after Paragon considered its work to be completed.

21. My children are home-schooled and as far as I know it is the general practice in the FLDS Community to home-school children.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED this 19th day of January 2016.

_____
Brian Jessop

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of January, 2016, I caused the foregoing **DECLARATION OF BRAIN JESSOP** to be served via the Court's ECF electronic filing system, on the following:

John W. Huber, U.S. Attorney
John K. Mangum, Assistant U.S. Attorney
District of Utah
185 S. State St., #300
Salt Lake City, UT 84111-1506

M. Patricia Smith, Solicitor of Labor
James E. Culp, Regional Solicitor
John Rainwater, Associate Regional Solicitor
Karen Bobela, Trial Attorney
Alicia Truman, Trial Attorney
Lydia Tzagoloff, Senior Trial Attorney and Special Assistant US Attorney
1244 Speer Boulevard, Suite 515
Denver, CO 80204

/s/ Rick J. Sutherland
For Jackson Lewis PLLC

4817-9345-1564, v. 1