Rick J. Sutherland (USB #3162)
M. Christopher Moon (USB #14880)
JACKSON LEWIS, PLLC
222 S. Main Street, #500
Salt Lake City, Utah 84101
Telephone: (801) 736-3199
Email: Rick.Sutherland@jacksonlewis.com
　　　　 Chris.Moon@jacksonlewis.com

Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| THOMAS E. PEREZ, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,<br><br>　　　PLAINTIFF,<br><br>v.<br><br>PARAGON CONTRACTORS CORP. AND BRIAN JESSOP, individually,<br><br>　　　DEFENDANTS. | Case No. 2:06 CV 00700<br><br><br><br>**DECLARATION OF DALE BARLOW** |

I, Dale Barlow, state and declare as follows:

　　1. I am an individual residing in Duchesne County, State of Utah.

　　2. I am over the age of 18.

　　3. I have personal knowledge of the facts set forth in this Declaration except those stated on information and belief. If called to testify, I could and would testify as follows.

　　4. Until May of 2013, I resided in Colorado City, Arizona.

　　5. I had been gathering nuts off of the ground at SUPR since approximately 2000. Initially, SUPR was opened by the owner to allow anyone from the general public to participate in nut gleaning activities. My original involvement was only gathering fallen nuts off the ground. From

1

the outset of my gleaning activities, my understanding was that all gleaners kept fifty percent of the nuts they gathered and left fifty percent at the farm. I acted in accordance with this understanding.

6. From around 2000 until approximately 2008 I did nothing more at SUPR than to glean nuts off of the ground, leaving half of what I collected at the farm and retaining half for myself. Many of the individuals and families who participated in the nut gleaning activities at SUPR were members of the nearby FLDS Community. There were also individuals gleaning nuts who, to the best of my information and belief, were not members of the FLDS community. During this time period, I am aware of another farm that had gleaning practices similar to that at the SUPR. The Wilson farm allowed individuals and families to glean nuts and my understanding is that that one half of the gleaned nuts were left at the farm and the individual or families gleaning the nuts retained one half of what they gleaned.

8. Around 2011, Paragon undertook a broader role at the nut farm including maintenance of the trees, grounds and improvements which Paragon had not previously done. Based upon my experience I felt I was able to perform maintenance services. Aware of my experience, Paragon asked if I would handle all of the farm responsibilities for them. With my commitment to maintain and operate the nut farm, I understood that Paragon agreed with SUPR to take on the expanded responsibilities. I began operating and maintaining the pecan farm in or about 2011.

10. I understood my relationship with Paragon to be that of a subcontractor to maintain and operate the SUPR farm. I have never worked for Paragon as an employee in its business and had no relationship with Paragon other than as a subcontractor to run SUPR's pecan farm. I did no other work for Paragon, but did simultaneously engage in flooring and plumbing work for others independent of Paragon.

11. In all of my efforts relating to operation and maintenance of the pecan farm, I focused on what I thought the farm owner wished to have done and what I felt would be in its best interests and I deferred to its directions. I received high level direction from the farm owner but the details of the maintenance and operation were left to my discretion.

12. I always set my own work hours and determined what work was to be done as well as how to do it. Paragon did not direct or control my time or efforts. When I needed assistance on the farm, I either arranged for someone to assist me (such as my sons) or I requested Paragon to send someone. When individuals from Paragon arrived to assist, I directed them rather than the opposite.

13. All of the equipment used on the farm was either owned by SUPR or I provided it. Paragon did not furnish any equipment. Access to the farm was obtained either through myself or through SUPR, not through Paragon. To my understanding, all of the activities involved in this lawsuit occurred on SUPR property and not on any property of Paragon.

14. I considered myself to be self-employed viewing my relationship with Paragon to be that of an independent contractor. There were no traditional employee benefits involved in my contract with Paragon such as sick leave, vacation, benefits or tax withholdings, and I was paid a lump sum at the conclusion of the season. However, there were times that I would ask Paragon for an advance if needed. The agreement was for one year at a time and could be terminated at any time, or simply not renewed, by either myself or by Paragon.

15. When the mechanized pecan harvest was completed, I considered my maintenance and operation responsibilities completed for the year. At that time, I understood the public was free to begin gleaning activities consistent with historical practices. Once the mechanical harvest was over, word spread that the farm would be open to the public for gleaning activities. I would

typically tell individual I knew that the mechanical harvest was over and anyone driving past the farm could see that the mechanical harvest was over.

16. In 2012 as well as for the years before that, I would typically open the gates from 9:00 a.m. until dark to allow members of the public who wanted to glean nuts access to the farm. I asked anyone still remaining at dusk to leave and I locked the gates. During the days I made the farm available for gleaning, people would come and go as they pleased and expend whatever effort they chose to.

17. The individuals and families were free to choose whether to participate in the nut gathering as well as to determine what time they would devote to gleaning or what effort they would expend if they did show up at the SUPR. The only direction given to them was by me informing individuals as they arrived where to go within the orchard to find nuts to pick up.

18. Paragon was not involved in the gleaning activities. During gleaning times I observed that Paragon did not set schedules, did not direct individuals in gleaning activities, did not determine working hours, did not determine days that the farm was open to gleaning activities, or be involved in any in the gleaning process.

19. Prior to 2012 I never discussed gleaning activities with Brian Jessop or Paragon. This is not information that I believe would have been of interest to Brian Jessop or Paragon. Nor did I tell Brian Jessop prior to the 2012 gleaning that half of the nuts they picked up were left on the farm and mixed in with those I harvested mechanically under my contract with Paragon. It was not until after the 2012 gleaning activities were over and the investigation by the Department of Labor had commenced that I told Brian Jessop about the fifty/fifty arrangement which had just been the historical practice.

20. No promise or suggestion was ever made by me or by anyone else to my knowledge that the individuals gleaning nuts would be compensated for the services they rendered associated with gathering nuts. I did not pay anyone and to my knowledge no one else did either.

21. I required all children who participated at the nut gleaning activities to be accompanied by their parents.

22. The time I spent maintaining and operating the farm at SUPR during 2011 and 2012 was varying and sporadic. My hours were entirely up to me and were not set by, nor did I report my hours to, Paragon. In 2011 and 2012, the total amount of time expended on the farm in furtherance of my operation and maintenance responsibilities and those who assisted me did not involve five hundred hours in any calendar quarter where any employee performed agricultural labor for not less than one hour.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED this __19__ day of January 2016.

_/s/ Dale Barlow_
Dale Barlow

## CERTIFICATE OF SERVICE

I hereby certify that on this **19th** day of January, 2016, I caused the foregoing **DECLARATION OF DALE BARLOW** to be served via the Court's ECF electronic filing system, on the following:

John W. Huber, U.S. Attorney
John K. Mangum, Assistant U.S. Attorney
District of Utah
185 S. State St., #300
Salt Lake City, UT 84111-1506

M. Patricia Smith, Solicitor of Labor
James E. Culp, Regional Solicitor
John Rainwater, Associate Regional Solicitor
Karen Bobela, Trial Attorney
Alicia Truman, Trial Attorney
Lydia Tzagoloff, Senior Trial Attorney and Special Assistant US Attorney
1244 Speer Boulevard, Suite 515
Denver, CO 80204

/s/ Rick J. Sutherland
For Jackson Lewis PLLC

4814-5803-8316, v. 1