## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| R. ALEXANDER ACOSTA, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,<br><br>    PLAINTIFF,<br>v.<br><br>PARAGON CONTRACTORS CORP., and BRIAN JESSOP, individually<br><br>    DEFENDANTS. | Civil Action No.  2:06-cv-00700 TC<br><br><br>**MOTION FOR ORDER TO SHOW CAUSE** |

Despite the Court's June 1, 2016 Contempt Order and its December 6, 2016 Sanctions Order, Defendants continue to violate the FLSA's child labor provisions, ignoring the Court's mandates. Defendants simply changed their name from Paragon Contractors Corporation to Par 2 Contractors, LLC, and promptly resumed using child labor. Defendants are similarly trying to circumvent the Court's orders by failing to report Par 2's successor relationship to Paragon and Brian Jessop's involvement with Par 2. In sum, over the last six months, Defendants have knowingly concealed their violation of the 2007 injunction and the Court's recent Order Appointing Special Master. For the reasons set forth below, the Court should find that Defendants are in contempt, again.

## I.      STATEMENT OF PRECISE RELIEF SOUGHT

Plaintiff, R. Alexander Acosta, Secretary of Labor, United States Department of Labor, respectfully moves this Court for an order requiring Defendants Paragon Contractors Corporation ("Paragon"), Par 2 Contractors, LLC ("Par 2"), as successor in interest to Paragon, and Brian Jessop ("Jessop"), individually, to appear and show cause why they should not be held in civil contempt for failing to abide by the Consent Judgment and injunction entered as an Order

of this Court on November 29, 2007 (Doc. 26) and the Order Appointing Special Master (Doc. 137) dated April 12, 2017.

Specifically, Par 2, a successor in interest to Paragon, violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA" or the "Act"), by employing minors in hazardous occupations on its behalf in violation of 5 C.F.R. §§ 570.55 and 570.67. This conduct violated Par 2's responsibilities under the 2007 Consent Judgment and injunction that prohibited future violations of the child labor provisions of the FLSA.

In addition, Par 2 and Brian Jessop have failed to comply with the reporting requirements in the Order Appointing Special Master. That Order requires Paragon and any successor in interest and Jessop to report the location of every work site where they perform work and the identity and dates of birth of the workers on such work sites. Jessop is also required to report information regarding his employment or any changes to his employment through an affidavit. Defendants have failed to comply with these requirements.

Defendants' disregard for the Court's mandates warrants an order compelling them to appear before this Court to show why they should not be held in civil contempt. Plaintiff respectfully requests that upon a finding of contempt, the Court order, at a minimum: (1) joinder of Par 2 Contractors, LLC, as an additional party to this action and the 2007 injunction and order appointing special master; (2) additional and more rigorous monitoring and reporting requirements, in addition to the special master, at Defendants' expense; (3) restart the 5-year time period covered by the order appointing special master; (4) Defendants to provide a copy of the 2007 injunction and order appointing special master to every contractor or employer for whom they work and provide written verification of receipt from each contractor to the special master and Wage Hour; (5) Defendants to hire a third party to provide FLSA training, with an

emphasis on child labor, to all current employees and any employees hired by Defendants over the next five years at Defendants' expense; (6) Defendants to provide a copy of the 2007 injunction and order appointing special master to all current employees and any employees hired over the next five years, and provide written verification of receipt from each employee to the special master and Wage Hour; (7) a prospective daily monetary penalty and/or incarceration for each day Defendants are found to be not in compliance with either the 2007 injunction or order appointing special master going forward; and (8) reasonable costs to the Plaintiff for the time spent investigating Defendants' non-compliance and preparing the motion for order to show cause. Plaintiff requests that upon a finding of contempt the Court allow the Plaintiff to brief the specific relief requested and submit a proposed sanctions order.

## II.        BACKGROUND AND RELEVANT FACTS

Plaintiff, R. Alexander Acosta, is the duly appointed Secretary of Labor, United States Department of Labor, and is charged with the administration and enforcement of the minimum wage, overtime pay, record keeping, and child labor requirements of the FLSA.  The Secretary of Labor is authorized to bring this Motion to prosecute civil contempt of Court.

A.        Previous Injunction

The Wage and Hour Division of the United States Department of Labor Salt Lake City District Office ("Wage Hour") filed this lawsuit following an investigation into complaints that Paragon used child labor in violation of the FLSA. The parties reached an agreement resolving the Secretary's claims which culminated in a permanent injunction and order signed by the Court on November 29, 2007 (Doc. 26). The Order directed that:

> Defendants [Paragon, Brian Jessop, and James Jessop] shall not, contrary to Sections 12(c) and 15(a)(4) of the FLSA, employ, suffer or permit minors to work in commerce or in the production of goods for commerce, or in an enterprise engaged in commerce or in the production of goods for commerce, within the

3

meaning of the FLSA under conditions constituting oppressive child labor as defined in § 3(l) of the FLSA, 29 U.S.C. § 203(l), and in occupations therein declared to be hazardous as defined in the regulations found at 29 C.F.R. Part 570 (Subparts C and E).

After a lengthy investigation which required the Secretary to file subpoena-enforcement actions against Defendants and others, on September 8, 2015, the Secretary filed a motion for an order to show cause why Defendants Paragon and Brian Jessop should not be held in contempt for having violated the injunction. The Court held an evidentiary hearing in January 2016. On June 1, 2016, the Court found Defendants Paragon and Brian Jessop in contempt of Court for violating the 2007 injunction. *See* Findings of Fact Conclusions of Law (Doc. 99).

The Court entered a Sanctions Order on December 6, 2016 (Doc. 109) finding:

Here, shortly after being caught using child labor in the construction industry and agreeing to the entry of the Injunction, Defendants secretly began profiting from child labor once again. Defendants sought to conceal their knowing and willful violation of the Injunction. They told employees to lie about the child labor and even developed signals and strategies for hiding child workers during inspections. They failed to maintain records of work performed on the Ranch, denied the Department access to the Ranch, refused to provide names of employees who worked at the Ranch, refused to respond to subpoenas, and made incredible denials of their involvement with the work at the Ranch. Additionally, the court found Defendants "not credible," and their testimony "evasive and often . . . contradicted by other witnesses' testimony." (Findings of Fact and Conclusions of Law 6–7, ECF No. 99.)

Doc. 109 at p. 10. The Court also found that "Defendants have left the Court with no assurance that they are in compliance with its order or that they will, on their own accord, comply in the future. Defendants' behavior has convinced the Court that without sufficient oversight they will continue violating the Injunction and profiting from the labor of children." *Id.*

As a remedy for Defendants' contempt, the Court appointed a special master to monitor Defendants' compliance with the Court's injunction, and ordered Defendants to make an initial

deposit of $200,000 to the Department of Labor to create a fund to compensate children for their work. Doc. 109.

B.   Order Appointing Special Master

After denying Defendants' motion for reconsideration and motion to stay, the Court entered the Order Appointing Special Master on April 12, 2017 (Doc. 137). Pursuant to the Order, the Master is responsible for a period of five years for evaluating Defendants' compliance with the 2007 injunction, and for conducting a minimum of four unannounced inspections of Defendants' work sites each year. The Order also requires Defendants to comply with the following notification requirements for five years:[1]

    a.   Paragon and Mr. Jessop will, at least three days before beginning work on any project, and immediately for projects on which they already are working, provide notification via email to the Master and the district director for Wage Hour regarding:

        i.   The location of every work site where Paragon and Mr. Jessop perform work regardless of whether the work is pursuant to contract or other formal or informal arrangement;

        ii.   The identity and the dates of birth of all of Mr. Jessop's and Paragon's workers on such work sites.

    b.   Mr. Jessop will disclose through email to the Master and the district director for Wage Hour the names and addresses of any businesses in which he or Paragon has more than a five percent ownership interest during the five-year reporting period. The Department should provide Wage Hour's email address to Mr. Jessop within seven days from the entry of this order.

---

[1] For purposes of the notification requirements, the Order defines Defendants as follows:

    Paragon: Paragon, any successors in interest, or any entity in which Paragon holds an ownership interest of 5% or more.

    Brian Jessop: Brian Jessop, any entity for which Jessop acts as an employer pursuant to 29 U.S.C. § 203(d); any entity in which Jessop is a manager, officer, or supervisor; any entity in which Jessop holds an ownership interest of 5% or greater; or any entity for which Jessop acts as an employer, a manager, officer, or supervisor; or any entity with which Jessop acts in the capacity of a joint employer. *See* Doc. 137 at p.2, fn. 2.

     c.   Mr. Jessop will disclose through email to the Master and the district director for Wage Hour, at least five days before commencing work, the location of every work site where Mr. Jessop is working in any capacity.

     d.   Mr. Jessop will provide to the Master and to Wage Hour, within ten days of changing employment (whether he works for a company he owns or not): (i) an affidavit with the name of his new employer (including address and phone number); (ii) a description of his job duties and the name of his supervisor; and (iii) an affidavit from a principal of the employer attesting to Mr. Jessop's percentage of ownership (if any), whether Mr. Jessop supervises any employees and if so their names and ages, and a list of any related entities.

Doc. 137 at p. 2-3.

     C.    <u>Conduct Violating the Injunction and Order Appointing a Special Master</u>

As shown below, Par 2, a successor in interest to Paragon, violated the FLSA by employing minors to engage in hazardous order occupations in violation of 5 C.F.R. §§ 570.55 and 570.67. This conduct violated Par 2's responsibilities under the 2007 injunction that prohibited future violations of the child labor provisions of the FLSA. In addition, both Par 2 and Brian Jessop are in violation of the Order Appointing Special Master by failing to comply with the obligatory reporting requirements.

     i.    *Par 2 is a Successor in Interest to Paragon and Brian Jessop is an Employee of Par 2*

Successor liability under the FLSA has yet to be specifically addressed by the Tenth Circuit. However, in *Chao v. Concrete Management Resources, LLC*, the district court permitted the plaintiff to amend her complaint, in part, based on a theory of successor liability under the FLSA. 2009 WL 564381, *3 (D. Kansas 2009). The court found that while the Tenth Circuit had not addressed the issue, the only circuit court that had "held, with no difficulty whatsoever, that successorship liability exists under the FLSA." *Id.* at *3 (citing *Steinbach v. Hubbard*, 51 F.3d 843 (9th Cir. 1995)). Since then, the Third, Seventh and Eleventh Circuits have addressed the merits of the issue and concluded that application of the federal common law standard of

6

successor liability to claims under the FLSA is the logical extension of existing case law. *See Thompson v. Real Estate Morg. Network,* 748 F.3d 142, 151 (3rd Cir. 2014); *Teed v. Thomas & Betts Power Solutions, LLC*, 711 F. 3d 763, 767 (7th Cir. 2013); *Hatfield v. A+ Nursetemps, Inc.,* 651 Fed.Appx. 901 (11th Cir. 2016).

The Tenth Circuit has expressly adopted the "*MacMillan* factors" in analyzing the federal common law standard for a successor corporation's liability in the Title VII context. *Trujillo v. Longhorn Manufacturing Co.*, 694 F.2d 221, 225 n. 3 (10th Cir. 1982). Those factors include whether the successor company had notice of the charge; the ability of the predecessor to provide relief; and whether there has been a substantial continuity in operations, work force, location, management, working conditions and methods of production. *Id.* (citing *EEOC v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086 at 1094 (6th Cir. 1974)). The "nature and extent of [successor] liability is subject to no formula, but must be determined upon the facts and circumstances of each case." *Scott v. Sopris Imports Ltd.*, 962 F.Supp. 1356, 1359 (D. Colo. May 7, 1997) (*citing MacMillan*, 503 F.3d at 1091). "The liability of a successor is not automatic, but must be determined on a case by case basis." *Id.*

Here, the overwhelming evidence from a variety of sources supports a finding that Par 2 is a successor of Paragon. The Secretary will summarize the evidence gathered below before applying the evidence to the *MacMillan* factors.

**<u>Porter Brothers</u>**

Porter Brothers, Inc. d/b/a Porter Brothers ("Porter Brothers") provides construction and general commercial contracting services in Arizona, California, Colorado, Nevada, New Mexico, Texas, and Utah. *See* Declaration of Dennis Porter attached hereto as Exhibit 1 at ¶ 1 ("Porter Decl."). Porter Brothers hired Paragon as a subcontractor for at least three jobs between March

2013 and April 2015. *Id*. at ¶ 2. Dennis Porter, an owner of Porter Brothers, confirmed that Brian Jessop was the estimator for Paragon and that Brian Jessop and Jake Barlow were his points of contact at Paragon. *Id*.

Beginning in May 2015, Porter Brothers received a bid from the same individuals it worked with at Paragon, but under the company name Par 2 Contractors, LLC. *Id*. at ¶ 3. Mr. Porter's office assistant sent an email to Brian Jessop on May 1, 2015, asking for a new W-9 form since his company name changed. *Id*. Jake Barlow responded the same day, copying Brian Jessop, and attaching a new W-9 for Par 2. *Id*. Notably, under Jake Barlow's signature is the company phone number and "Paragon Contractors." *See* Ex. E attached to Porter Decl.

Between May 2015 and June 2016, Porter Brothers hired Par 2 as a subcontractor for at least five jobs. Porter Decl. at ¶ 3. Porter Brothers continued to send bid requests to Brian Jessop at Par 2 as they had with Paragon. *Id*. The bids they received from Par 2 had Brian Jessop's name at the bottom of them. *Id*. Brian Jessop and Jake Barlow continued to be Porter Brothers' points of contact for Par 2, along with Keith Dutson and Don Jessop (both former Paragon employees). *Id*. Don Jessop is Brian Jessop's brother.

Porter Brothers produced a number of documents to Wage and Hour related to its business with Paragon and Par 2, several of which are relevant here. First, the firm and vendor contact information maintained by Porter Brothers for Paragon and Par 2 reflect the same points of contact – Brian Jessop and Jake Barlow. The phone number and physical address for both companies is also the same (435-874-1310; 1065 W. Utah Ave, Hildale, UT), though the P.O. Box payment address and email addresses are different.[2] *See* Exs. B, C, G, H attached to Porter

---

[2]   However, Brian Jessop and Jake Barlow used pcctrades@gmail.com and pccframing@gmail.com for email with Paragon. With Par 2, they changed their addresses to

Decl. Second, Porter Brothers produced copies of subcontracts it entered into with Paragon and Par 2. It produced three agreements entered into with Paragon and for all three, Brian Jessop is listed as the contact person. Brian Jessop signed each contract, and his name appears on the work proposals. *See* Ex. A to Porter Decl. Porter Brothers also produced five subcontract agreements entered into with Par 2. While Jake Barlow is listed as the contact person for four of them (Brian Jessop is the contact person on the fifth, *see* Ex. F to Porter Decl., Bates stamp p. 209), for all five, Brian Jessop's name is on the signature block of the work proposals. *See* Ex. F to Porter Decl. In addition, on at least two of the proposals, there are notations that read "revised per phone conversation with Brian Jessop 6.14.15" and "Per phone call w/ Brian Jessop 5/21/15." *Id.* at Bates stamp pp. 192 & 208.

### Arizona Division of Occupational Safety & Health Investigation

Wage Hour searched the Occupational Safety and Health's ("OSHA") website to determine whether Par 2 had been subject to any enforcement inspections. *See* Declaration of Kevin Hunt attached hereto as Exhibit 2 ("Hunt Decl."). There were two such inspections on August 31, 2015 (inspection number 1088586) and November 22, 2016 (inspection number 1193091) conducted by the Arizona Division of Occupational Safety & Health (ADOSH) of Par 2. *Id.* In both, violations were found and Par 2 paid the civil money penalties. *Id.* The inspection files, obtained through a public records request, further substantiate Par 2's relationship as a successor to Paragon. *Id.*

For instance, in response to a request for records from ADOSH in the first inspection (1088586), Par 2 produced the following: (a) training records including a Fall Protection Test

---

par2contractors@speedmail.us and par2brian@speedmail.us. However, Par 2 produced numerous work contracts pursuant to a subpoena and in several of the contracts they continued to use pccframing@gmail.com in the box that asked for subcontractor contact information.

taken by Kimball Barlow (a former employee of Paragon who identified himself to ADOSH as a foreman for Par 2) on November 11, 2015, signed by Brian Jessop as a Supervisor; (b) Paragon Contractor Corp.'s Occupational Safety and Health Policy manual with "c/o Kimball Barlow" dated April 2014; (c) field notes of the investigator's discussion with the contractor (Porter Brothers) identifying the employee responsible for the violation as a foreman for Paragon Contractors; (d) OSHA 300 logs[3] for 2012, 2013, and 2014 – all bearing Paragon Contractor's name; and (e) an Information Sheet that lists Par 2 as the employer, with Paragon's address and phone number. *See* Ex. A attached to Hunt Decl. The records reflect that Benjamin Barlow and Kimball Barlow – both former employees of Paragon – were the points of contact for the ADOSH inspector.[4] *Id.*

Similarly, during the second inspection (1193091) of Par 2, the ADOSH Information Sheet (Form 100) lists Brian Jessop with the title of "Safety Coordinator" in the "correspondence to the attention of" box. *See* Ex. B attached to Hunt Decl. Following the inspection, the inspector emailed Brian Jessop directly to request records. *Id.* Jake Barlow responded and produced records, including OSHA 300 logs for Paragon for 2014. *Id.* Finally, the foreman at the job site during ADOSH's inspection was Phil Barlow, also a former employee of Paragon.

**Wage Hour's Investigation of Par 2**

Wage Hour recently opened an investigation of Par 2 to determine its compliance with the FLSA. *See* Ex. 2, Hunt Decl., at ¶ 7. As part of the investigation, Wage Hour issued a records subpoena before the initial conference, which was held on August 15, 2017. *Id.* Don Jessop,

---

[3] An OSHA 300 log is a mandatory reporting requirement imposed on all establishments under OSHA's jurisdiction to maintain a summary of all work-related injuries and illnesses.

[4] Benjamin Barlow signed the W-9 Paragon produced to Porter Brothers in March 2012. *See* Ex. D attached to Porter Decl.

Brian Jessop's brother and the purported owner of Par 2, attended the initial conference. *Id*. Don Jessop was previously employed by Paragon. He claimed that he started Par 2 at the end of 2014 in the same business complex as Paragon (1065 W. Utah Avenue in Hildale, UT), but recently relocated to 1037 W. Utah Avenue "a month or two ago." *Id*. He confirmed that Par 2 is primarily a commercial framing company, as was Paragon. *Id*.

Don Jessop stated he is 100% owner of Par 2, yet he had no idea what Par 2's annual dollar volume of business is or its Employer Identification Number; he had no idea how business records are kept by the company; he did not know when the workweek began; he was not sure how employees are paid for travel time, overtime, or per diem; and he was not sure if employees receive sick leave. *Id*. at ¶ 8. Although Don Jessop claimed to do the hiring and firing for the company, he was not sure how many salaried employees he had. He guessed that Par 2 has 3-4 salaried employees and the rest are full-time hourly employees. *Id*. He identified himself, Jake Barlow (office manager), and Benjamin Barlow as the salaried employees. *Id*. He was not sure what Jake Barlow or Benjamin Barlow's salaries were (and he later stated that Benjamin may be hourly, he did not know). *Id.*

When asked if Par 2 employs any former Paragon employees, Don Jessop stated that a few employees asked him for a job but he could only remember the names of two individuals, Philip Barlow and Winston Zitting. *Id*. at ¶ 9. He could not explain why or when Paragon employees asked him for a job at Par 2. *Id*.

In response to Wage Hour's subpoena, Par 2 produced IRS W-4 forms for 61 employees. *Id*. Wage Hour compared Par 2's employee list with an employee list Paragon provided in January 2013 pursuant to a subpoena. *Id*. At least 14 of Par 2's employees worked at Paragon in

2013, including Jake Barlow, Keith Dutson, Benjamin Barlow, and Don Jessop – all current Par

2 management officials – and Brian Jessop who is at least an employee of Par 2. *Id.*

There are two issues worth highlighting with respect to Wage Hour's subpoena duces tecum to Par 2. First, the Wage Hour Investigator ("WHI") could not locate Par 2 at the address provided on the Utah Secretary of State's website (780 N. Pinion Street, Hildale, UT) when he attempted to serve the subpoena. *Id.* at 10. After further investigation the WHI learned that Par 2 was located in the same business complex as Paragon. *Id.* The WHI rang the buzzer located outside the building and spoke to a woman who said everyone from Par 2 was out for lunch, but she would try to get a hold of her "boss." *Id.* The WHI asked if the person she was trying to get a hold of was Brian Jessop and she said yes and confirmed that Brian Jessop works for Par 2. *Id.* The woman refused to provide her name or any additional information. *Id.*

Second, there is reason to believe Par 2 altered documents before producing them to Wage Hour pursuant to a subpoena. *Id.* at 11. A side-by-side comparison of the records produced by Porter Brothers and those produced by Par 2 demonstrates that Par 2 removed Brian Jessop's name from the contract documents in several locations. *Id.* In the contracts produced by Porter Brothers, "Respectfully, Brian Jessop" appears at the bottom of each work proposal. See Ex. F to Porter Decl. And in a few locations contract prices are crossed out and re-written with a box that says "revised per phone conversation with Brian Jessop 6.14.15" and "Per phone call w/ Brian Jessop 5/21/15." *Id.*[5] In the identical contracts produced by Par 2, the "Respectfully, Brian Jessop" has been scrubbed and the boxes say "per phone call" only. *See* Ex. D attached to Hunt

---

[5] *See* Bates stamp pp. 183, 192, 200, 208, & 216 to Ex. F attached to Porter Declaration.

Decl. The rest of the text box that reads "with Brian Jessop 6.14.15" and "w/ Brian Jessop 5/21/15" appears to have been scrubbed. *Id*.[6]

When asked about Brian Jessop's involvement with Par 2, Don Jessop said that Brian Jessop sometimes provides assistance in the evenings by ensuring bids are in the appropriate range. Ex. 2, Hunt Decl. at ¶ 12. He claimed that Brian Jessop more or less acts as a consultant for Don Jessop and he described bidding and estimating as a "hobby" for Brian Jessop, which is why Brian Jessop is happy to do this work for free as a favor for his brother. *Id*. When asked later about Brian Jessop's Par 2 email address (par2brian@speedmail.us), Don Jessop confirmed that he authorized Brian Jessop to open that email account on behalf of Par 2 (yet Don Jessop refused to produce emails to/from that account in response to the subpoena on the basis that he did not control the server and he was unwilling to ask his brother to produce them voluntarily).[7] *Id*.

Don Jessop confirmed that Brian Jessop communicates with contractors directly when Don Jessop is too busy or if Brian Jessop has specific questions about a job. *Id*. And towards the end of the initial conference, Don Jessop stated that Brian Jessop has been involved more than

---

[6] Compare Exhibit D to Hunt Declaration, Bates stamp pp. "Par 2 000116," "Par 2 00082," and "Par 2 000105" with Exhibit F to Porter Declaration, Bates stamp pp. 200, 208, and 216. Note: Par 2 did not produce the proposal showing Brian Jessop's name attached to several Porter Brothers contracts, but they were produced by Porter Brothers. *Compare* Ex. D to Hunt Decl., Bates stamp pp. "Par 2 000173-000179" and "Par 2 000242-000251," *with* Ex. F to Porter Decl., Bates stamp pp. 176-183 and 185-192.

[7] Wage Hour issued a separate subpoena *duces tecum* directly to Brian Jessop seeking all electronic correspondence sent to or from his par2brian@speedmail.us address over the last three years and all information known about the server operating for that email domain. The subpoena is attached hereto as Exhibit 3. The subpoena required Mr. Jessop to appear to produce documents responsive to the subpoena by September 25, 2017, at 10:00 a.m. Despite representations from Mr. Jessop's attorney, Rick Sutherland, that Mr. Jessop would appear and comply with the subpoena, Mr. Jessop did not appear or comply with the subpoena.

usual recently as Par 2 has been really busy and Don Jessop has had to lean on him more. *Id.* He confirmed that Brian Jessop handles most of the bids/proposals for Par 2 and communicates regularly with contractors on behalf of Par 2. *Id.*

Notably, Par 2 does work for large commercial hotels (e.g., Hyatt and Marriott), universities, and other large scale commercial projects. *Id.* According to the information Par 2 reported to the Phoenix Wage Hour Office, its annual dollar volume YTD in 2016 was over $8 million. *Id.*

### Prior Wage Hour Experience With Par 2

In March 2016, Wage Hour received information indicating that young children were running heavy equipment at a job site at a hotel in Springdale, UT. *See* Declaration of Joseph Burgess attached hereto as Exhibit 4 at ¶ 2 ("Burgess Decl."). WHI Burgess traveled to Springdale on March 22, 2016, to investigate the allegations. *Id.* He first visited with the manager of a hotel next door to a construction site at a Springhill Suites hotel. *Id.* at 3. The manager stated that he raised concerns with the superintendent at the construction site about youth working on the premises. *Id.* WHI Burgess then walked over to the construction site and visited with Rick Szurgot, who introduced himself as the superintendent for the prime contractor, Bonneville Builders. *Id.* at ¶ 4. Mr. Szurgot produced a list of the subcontractors on the job, which included Par 2 Contractors, LLC, as the "Rough Carpentry" subcontractor, with Brian Jessop as the point of contact at (435) 874-1310 (the same phone number used by Paragon). *See* Ex. 1 attached to Burgess Decl.[8]

---

[8] By the time WHI Burgess got to the job site the only work he observed was individuals carrying tool belts and using hammers. He did not make any findings with respect to FLSA violations.

**Application of the "*MacMillian* factors" to Par 2**

Based on the foregoing, the Court should find that Par 2 is a successor in interest to Paragon and Brian Jessop is an employee of Par 2.

      1.     *Par 2 had notice of the charge*

Paragon and Brian Jessop had notice of the 2007 injunction and Order Appointing Special Master as parties to the proceedings that produced the injunction and order. Par 2 had the same notice given that Par 2 is literally "Paragon 2." Par 2 is the same company as Paragon for all intents and purposes with no meaningful distinction between it and Paragon other than a name change. Brian Jessop continues to be involved at Par 2, as does Jake Barlow, Don Jessop, and Keith Dutson – all former employees and management of Paragon. Indeed, the only reason for Par 2 and Brian Jessop to conceal Brian Jessop's involvement with Par 2 (through statements from Don Jessop, altering documents to hide Brian Jessop's name, and Brian Jessop's failure to notify the Master and Wage Hour of his employment with Par 2), is to protect Par 2 from Paragon and Brian Jessop's liability related to the 2007 injunction and the Sanctions Order, including the Order Appointing Special Master.

Moreover, on several occasions the undersigned communicated to Rick Sutherland, counsel for Paragon and Brian Jessop, the Secretary's position that Par 2 is a successor in interest to Paragon and, as such, Par 2 is bound by the reporting requirements in the Order Appointing Special Master. *See* electronic correspondence from the undersigned to Rick Sutherland dated April 18 and April 25, 2017, attached hereto as Exhibit 5. At a minimum, this notice should have been communicated to Defendants.

2.      *The ability of Paragon to provide relief*

Paragon's ability to provide relief is a moot issue. Paragon and Brian Jessop have reported to the Master and Wage Hour that Paragon is no longer doing business and it has no employees. Having shifted its business to Par 2, only Par 2 can provide the relief requested.

3.      *There has been a substantial continuity in operations, work force, location, management, working conditions and methods of production*

There is a substantial continuity in the operations between Paragon and Par 2 with the same management, several of the same employees, the use of the same business address/location, and email addresses; and Par 2, like Paragon, is a commercial framing company with the same working conditions and methods of production. The emails between Porter Brothers and Brian Jessop and Jake Barlow (asking Brian Jessop for a new W-9 because his company name changed) underline the reality that Paragon simply changed its name to Par 2 and continued business as usual.

Much of the information provided by Don Jessop raises red flags while complimenting the information Wage Hour obtained from other sources. On the one hand, it is difficult to believe that Don Jessop, a purported 100% owner of Par 2 (and former foreman of Paragon), is completely unaware of the inner workings of his company, from employee wages and benefits, the number of salaried employees he hired or their salary amount, or even how records are kept. Don Jessop's ignorance is understandable, however, if these decisions pre-dated his employment with Par 2, *i.e.*, they were established by Paragon before Par 2 succeeded Paragon.

On the other hand, Don Jessop confirmed that Brian Jessop continues to do the estimating and bidding for Par 2, just as Dennis Porter described and as the records produced by Porter Brother's reflect. This is consistent with the records obtained from ADOSH where Brian Jessop's name continues to reflect his role as a supervisor and representative of Par 2. And it is

16

consistent with the subcontractor list Wage Hour obtained at a job site in Springdale providing Brian Jessop as the point of contact for Par 2. Moreover, Par 2's efforts to conceal and minimize Brian Jessop's involvement, even to go so far as to alter documents produced pursuant to an administrative agency subpoena, highlight the Defendants' willingness and intent to continue to deceive the Department of Labor and this Court—just as the Court noted in the Order on Sanctions. *See* Doc. 109 at p.4 ("At the hearing, as well as throughout discovery, it became clear that Paragon and Brian Jessop were not trustworthy and would go to great lengths to deceive the court and the Government.").

The ADOSH records also highlight the successor relationship between Paragon and Par 2. In response to a request for records from an ADOSH inspector, Par 2 produced training records, safety manuals, and OSHA 300 logs all bearing Paragon Contractor's name. Par 2 would only use and rely on Paragon's training manuals, safety manuals, and accident and injury logs to satisfy record requests from a state agency if it were a successor to Paragon. Moreover, the individuals involved in the ADOSH inspection on behalf of Par 2 were all former members of management or employees of Paragon.

These facts and the evidence set forth above establishes that Par 2 is operating as a successor in interest to Paragon and that Brian Jessop continues to be employed by Par 2. As such, the Court should find that Par 2, as successor in interest to Paragon, is bound by the 2007 injunction and Order Appointing Special Master, and join Par 2 as an additional party under Fed. R. Civ. P. 25(c).[9]

---

[9] Under Rule 25(c), "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." A "transfer of interest" in a corporate context "occurs when one corporation becomes the successor to another by merger or other acquisition of the interest the

ii.     *Par 2 violated the child labor provisions of the FLSA and the 2007 Injunction*

The Phoenix Wage Hour Office conducted a limited investigation of Par 2 in August 2016 (the Salt Lake City Wag Hour District Office was not aware of this investigation until after the fact). *See* Hunt Decl. at ¶ 6. That office determined that Par 2 violated two hazardous order regulations by employing two minors in occupations involving the operation of power-driven wood-working machines (in violation of Hazardous Order No. 5, 29 C.F.R. § 570.55) and in roofing operations (in violation of Hazardous Order No. 16, 29 C.F.R. § 570.67). *Id.* Wage Hour assessed a $6,808.00 civil money penalty, which Par 2 paid, and the case was closed. *Id.* (The Assessment and Notice to Employer of Employment of Minors Contrary to the FLSA is attached as Exhibit C to Hunt Decl.) Because Par 2 paid the civil money penalty, the Assessment became a final order. *See* 29 C.F.R. § 580.5. Therefore, Par 2, a successor in interest to Paragon, violated the FLSA by employing minors to engage in hazardous order occupations in violation of 5 C.F.R. §§ 570.55 and 570.67. This conduct, in turn, violates the 2007 injunction which prohibits future violations of the child labor provisions, including the hazardous order occupations, of the FLSA. *See* Doc. 26.

iii.    *Par 2 and Brian Jessop have Failed to Comply with their Reporting Obligations*

---

original corporate party had in the lawsuit." *Dalzell v. Trailhead Lodge at Wildhorse Meadows, LLC,* 2012 WL 3150565 (D. Colo., Aug. 2, 2012) (citing *Luxliner P.L. Export Co. v. RDI/Luxliner, Inc.,* 13 F.3d 69, 71 (3d Cir.1993)). Substitution of a successor in interest or its joinder as an additional party under Rule 25(c) is within the sound discretion of the trial court. *Prop-Jets, Inc. v. Chandler,* 575 F.2d 1322, 1324 (10th Cir. 1978). Notably, "[t]he most significant feature of Rule 25(c) is that it does not require that anything be done after an interest has been transferred." *Dalzell,* 2012 WL 3150565 at *1. "The action may be continued by or against the original party, and the judgment will be binding on the successor in interest even though the successor is not named." *Id.* (citing *Capitol Packaging Corp. v. Stone Container Corp.*, 2006 WL 6840942, at *2 (D. Colo. June 27, 2006)).

By its own terms, the Order Appointing Special Master binds Paragon and any successors in interest. *See* Doc. 137 at p. 2, fn. 2. Defendants were ordered to comply with specific reporting requirements to the Master regarding the location of every work site where they perform work in any capacity. No such reports have been made.

Specifically, Defendants, including any successors in interest to Paragon, "at least three days before beginning work on any project, and immediately for projects on which they already are working," are required to provide notification to the Master and Wage Hour regarding the location of the work sites and the identity and dates of birth of all of the workers on the job sites. Doc. 137. Brian Jessop is required to disclose through email to the Master and to Wage Hour, at least five days before commencing work, the location of every job site where he is working in any capacity. *Id*. Further, Brian Jessop is required to provide to the Master and Wage Hour within 10 days of changing employment, an affidavit stating the name of his employer, a description of his job duties and the name of his supervisor, as well as provide additional information from a principal of his employer. *Id*.

Since the entry of the Court's Order on April 12, 2017, the Master has received two emails from Brian Jessop. *See* Declaration of Erik Strindberg attached hereto as Exhibit 6, at ¶ 3 ("Strindberg Decl."). The first is dated May 2, 2017, and states:

> Eric,
> At this time Paragon/Brian Jessop have no jobsites in which we are performing any work or have any workers or employees. We have no upcoming contracts or jobsites that we will be working on.
>
> I do not have ownership in any other business
>
> Also at this time I am pursuing another job which looks like it will open up. In accordance with the order I will let you know when I take on that job.
>
> Thank you,
> Brian Jessop

*See* Ex. A attached to Strindberg Decl. The second is dated June 29, 2017 and states in relevant

part:

> Beginning July 1st I have taken a job working for Desert Storm Transportation 1280 W Utah Ave. Hildale, Utah. 435-656-9583. Duties will be to deliver and pickup loads and will not be related to construction work therefore I will not be working on a construction site. Neither I nor Paragon has any ownership in Desert Storm Transportation and I am not in a supervisory role with them. They are working on the affidavit and I will get that to you as soon as it is finished.
> Thank you

*See* Ex. B attached to Strindberg Decl.

Wage Hour only received the first email dated May 2, 2017. *See* Hunt Decl. at ¶ 13. No

other reports have been made to the agency or the Master from Defendants.[10]

Defendants, including Par 2 as a successor in interest to Paragon, have failed to notify the

Master and Wage Hour regarding the location of the work sites and the identity and dates of birth

of all of the workers on the job sites "at least three days before beginning work on any project,

and immediately for projects on which they already are working." Brian Jessop has also failed to

disclose through email to the Master and to Wage Hour, at least five days before commencing

work, the location of every job site where he is working in any capacity. Further, Brian Jessop

failed to provide to the Master and Wage Hour within 10 days of changing employment, an

---

[10] Wage Hour learned from the Master that Brian Jessop reported working for Desert Storm Transportation. *See* Hunt Decl. at ¶ 14. Wage Hour sent investigators to the company to inquire further. *Id.* The woman who opened the door confirmed that Desert Storm operates within the building. She stated that she has never seen Brian Jessop on the premises – and she was visibly puzzled by the suggestion that was any connection between Mr. Jessop and the company. *Id.* Wage Hour's investigators then traveled to Desert Storm's shop location. *Id.* When they arrived, a woman was waiting for them with the phone number for Rich Barlow, the owner of Desert Storm. They spoke with Mr. Barlow who provided an employee list with duties. *Id.* Mr. Jessop's name appeared on the list and his job duties were listed as cleaning trailers in the yard. *Id.* Notably, "cleaning trailers in the yard" is different that the job duties reported by Jessop that he is purportedly delivering and picking up loads. *See* Ex. B attached to Strindberg Decl.

affidavit stating the name of his employer, a description of his job duties and the name of his supervisor, as well as provide additional information from a principal of his employer. Brian Jessop failed to provide this affidavit even for Desert Storm, his purported employer. He has provided no information regarding his employment with Par 2.

Defendants' failure to comply with the reporting requirements in the order renders the purpose and intent of the appointment meaningless. The Court appointed a special master in this case because it was convinced "that without sufficient oversight [Defendants] will continue violating the Injunction and profiting from the labor of children." Doc. 109 at p. 10. In fact, that is exactly what Defendants have accomplished. By failing to comply with the reporting requirements to the special master and Wage Hour, Par 2 has gone without oversight and, following in the path of its predecessor Paragon, it is continuing to violate the injunction and profit from the labor of children.

## III.    DEFENDANTS ARE IN CONTEMPT

In order to prove contempt of a court order, a plaintiff must establish by clear and convincing evidence, that (1) a valid court order existed, (2) the defendants had knowledge of the order, and (3) the defendants disobeyed the order. *Reliance Ins. Co. v. Mast. Constr. Co.,* 159 F.3d 1311, 1315 (10th Cir. 1998); *see also F.T.C. v. Kuykendall,* 371 F.3d 745, 756 (10th Cir. 2004).

The Court has wide discretion in fashioning an equitable remedy for civil contempt. *See*, *e.g., Rodriguez v. IBP, Inc.,* 243 F.3d 1221, 1231 (10th Cir. 2001) ("A district court may exercise broad discretion in using its contempt power to assure compliance with its orders."). The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief. *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 193 (1949). "Sanctions in

civil contempt proceedings may be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC,* 478 U.S. 421, 443 (1986). When the public interest is involved, the court's equitable powers assume an even broader and more flexible character. *AT&T Broadband v. Tech Commc'ns, Inc.,* 381 F.3d 1309, 1316 (11th Cir. 2014).

Because all of the required elements to prove contempt of a court order can be established by Plaintiff, Defendants should be compelled to appear and show cause why they should not be held in contempt for failing to comply with the 2007 Injunction and the 2016 Order Appointing Special Master. Both are valid Court orders of which the Defendants had knowledge and Defendants disobeyed the orders.

## IV.    REQUEST FOR RELIEF

Should the Court find Defendants are in contempt of its orders, Plaintiff respectfully requests that the Court order the following relief: (1) joinder of Par 2 Contractors, LLC, as an additional party to this action and the 2007 injunction and order appointing special master; (2) additional and more rigorous monitoring and reporting requirements, in addition to the special master, at Defendants' expense; (3) restart the 5-year time period covered by the order appointing special master; (4) Defendants to provide a copy of the 2007 injunction and order appointing special master to every contractor or employer for whom they work and provide written verification of receipt from each contractor to the special master and Wage Hour; (5) Defendants to hire a third party to provide FLSA training, with an emphasis on child labor, to all current employees and any employees hired by Defendants over the next five years at Defendants' expense; (6) Defendants to provide a copy of the 2007 injunction and order

appointing special master to all current employees and any employees hired over the next five years, and provide written verification of receipt from each employee to the special master and Wage Hour; (7) a prospective daily monetary penalty and/or incarceration for each day Defendants are found to be not in compliance with either the 2007 injunction or order appointing special master going forward; and (8) reasonable costs to the Plaintiff for the time spent investigating Defendants' non-compliance and preparing the motion for order to show cause. Plaintiff requests that upon a finding of contempt the Court allow the Plaintiff to brief the specific relief requested and submit a proposed sanctions order.

## V.    CONCLUSION

For the foregoing reasons, the Secretary of Labor respectfully requests that the Court issue an order compelling Defendants Paragon Contractors, Par 2 Contractors, LLC, as successor in interest to Paragon, and Brian Jessop to appear and explain why they should not be held in civil contempt of the 2007 Injunction and 2016 Order Appointing Special Master. If Defendants are unable to establish they are not in contempt, this Court should permit Plaintiff to brief the specific relief requested and submit a proposed sanctions order.

Dated this 25th day of September, 2017.

Respectfully submitted,

Nicholas C. Geale, Solicitor of Labor
James E. Culp, Regional Solicitor
John Rainwater, Associate Regional Solicitor
Lydia Tzagoloff, Trial Attorney and Special
    Assistant United States Attorney
Alicia A.W. Truman, Trial Attorney

*/s/ Karen E. Bobela*
_____
Karen E. Bobela, Trial Attorney
United States Department of Labor
Attorneys for Plaintiff

23

## <u>CERTIFICATE OF SERVICE</u>

I certify that a courtesy copy of the foregoing Motion for Order to Show Cause and attachments were served this 25th day of September 2017, through the Court's CM/ECF system:

Rick J. Sutherland
Jackson Lewis PLLC
222 South Main Street, Suite 500
Salt Lake City, UT 84101

/s/ *Karen E. Bobela*
Karen E. Bobela, Trial Attorney