IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| R. ALEXANDER ACOSTA, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,<br><br>    PLAINTIFF,<br>v.<br><br>PARAGON CONTRACTORS CORP., and BRIAN JESSOP, individually<br><br>    DEFENDANTS. | Civil Action No.  2:06-cv-00700 TC<br><br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEF** |

During a Status Conference on November 20, 2017, the Court asked whether the "*MacMillan* factors" the Tenth Circuit used to analyze the federal common law standard for a successor corporation's liability in a Title VII case, *Trujillo v. Longhorn Manufacturing Co.*, 694 F.2d 221 (10th Cir. 1982), also apply in the Fair Labor Standards Act ("FLSA") context. As set out in the following supplemental brief, the short answer is yes, the "*MacMillan* factors" should be used to analyze successor liability under the FLSA.

The Tenth Circuit has not specifically addressed successor liability under the FLSA. However, as early as 1944, the United States Supreme Court contemplated successor liability under the FLSA coincidentally in the same context we have here – contempt of an injunction prohibiting violations of the statute. *See Walling v. Reuter Co.,* 321 U.S. 671 (1944). Since then, numerous circuit courts have adopted standards similar to the "*MacMillan* factors" in analyzing successor liability under the FLSA.

In *Walling*, the Supreme Court had to determine whe2:06ther the dissolution of a corporate defendant rendered moot the appellate review of an injunction restraining the corporate defendant and those associated or identified with it from violating the FLSA. *Id*. at 674. The Court held that injunctions to prevent violations of the FLSA may be enforced by contempt

1

proceedings "against the corporation, its agents and officers and those individuals associated with it in the conduct of its business, *but it may also, in appropriate circumstances, be enforced against those to whom the business may have been transferred, whether as a means of evading the judgment or for other reasons*." *Id*. (emphasis added). The Court reasoned, that "[t]he vitality of the judgment in such a case survives the dissolution of the corporate defendant." *Id*. And that "these principles may be applied in fuller measure in furtherance of the public interest, which here the [Secretary of Labor] represents, than if only private interests were involved." *Id*. at 674-75.[1,2]

Indeed, in the labor and employment context, federal courts have developed a common-law doctrine of successorship liability which includes some or all of the "*MacMillan* factors."

---

[1] The Court went on to find, in the context of facts strikingly similar to those here:

> Whether a family business, such as this one appears to be, has successfully avoided all responsibility for compliance with the judgment entered against the family corporation, by the simple expedient of dissolving it and continuing the business under the individual control of members of the family, as appears to have taken place here, is a question which it is unnecessary for us to decide on the basis of the scanty and not entirely enlightening affidavits now submitted to us. It is enough for present purposes, if the appellate procedure, rendered abortive by respondent's dissolution, has not deprived petitioner of the benefits of the judgment rendered in his favor by the District Court, *that he is entitled to initiate proceedings to enforce the judgment against individuals who either disobey its command or participate in the evasion of its terms. In such proceedings the question as to how far the successor to the corporation is bound by the decree may be fully investigated by the District Court, with appropriate appellate review.*

*Walling*, 321 U.S. at 675 (emphasis added).

[2] Similarly, in an ERISA case, the Eleventh Circuit found that those denominated "successors and assigns" could be held liable for damages flowing from failure to abide by an injunction. *Combs v. Ryan's Coal Co., Inc.,* 785 F.2d 970 (11th Cir. 1986). "Successors and assigns may ... be instrumentalities through which defendant seeks to evade an order or may come within the description of persons in active concert or participation with them in the violation of an injunction. If they are, by that fact they are brought within [the] scope of contempt proceedings by the rules of civil procedure [Rule 65(d)]." *Id.* at 982.

2

*See Resilient Floor Covering Pension Trust Fund Bd. of Trustees v. Michael's Floor Covering, Inc.*, 801 F.3d 1079 (9th Cir. 2015). This common law doctrine extends to legal obligations arising under the National Labor Relations Act ("NLRA"), the Fair Labor Standards Act ("FLSA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Family and Medical Leave Act ("FMLA"), among others. *See, e.g., Fall River Dyeing & Finishing Corp. v. NLRB,* 482 U.S. 27 (1987) (NLRA); *Einhorn v. M.L. Ruberton Constr. Co.,* 632 F.3d 89 (3rd Cir. 2011) (ERISA); *Steinbach v. Hubbard,* 51 F.3d 843 (9th Cir. 1995) (FLSA); *Bates v. Pac. Maritime Ass'n,* 744 F.2d 705 (9th Cir. 1984) (Title VII); *Sullivan v. Dollar Tree Stores, Inc.,* 623 F.3d 770, 780–81 (9th Cir. 2010) (recognizing regulations that incorporate common law successorship principles in defining successors-in-interest for purposes of FMLA liability).

> In *Resilient Floor Covering*, 801 F.3d at 1090, the court found that:
>
> Striking a "balance between the need to effectuate federal labor and employment ... policies and the need ... to facilitate the fluid transfer of corporate assets," the successorship doctrine, when applicable, holds legally responsible for obligations arising under federal labor and employment statutes businesses that are substantial continuations of entities with such obligations. *Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac,* 920 F.2d 1323, 1326 (7th Cir.1990). "The inquiry [in these successorship cases] is [therefore] not merely whether the new employer is a 'successor' in the strict corporate-law sense of the term. The successorship inquiry in the labor-law context is much broader." *Sullivan,* 623 F.3d at 781. "The primary question in [labor and employment] successorship cases is whether, under the totality of the circumstances, there is 'substantial continuity' between the old and new enterprise." *Haw. Carpenters Trust Funds v. Waiola Carpenter Shop, Inc.,* 823 F.2d 289, 294 (9th Cir.1987); *see also New England Mech., Inc. v. Laborers Local Union 294,* 909 F.2d 1339, 1342 (9th Cir.1990); *Steinbach,* 51 F.3d at 846.

Moreover, "decisions on successorship must balance, *inter alia,* the national policies underlying the statute at issue and the interests of the affected parties." *Sullivan,* 623 F.3d at 782 (quoting *Steinbach,*51 F.3d at 846). "Because the origins of successor liability are equitable, fairness is a prime consideration in its application." *Id.* These decisions require analyzing the

3

interests of the new employer and the employees and of the policies of the labor laws in light of the facts of each case and the particular legal obligation which is at issue. *Id.*[3]

A federal common law standard for successor liability has slowly gained traction in the field of labor and employment disputes over the course of almost fifty years. *Thompson v. Real Estate Morg. Network,* 748 F.3d 142, 151 (3rd Cir. 2014) (adopting the equivalent of the *MacMillan* factors to analyze successorship under the FLSA). As the Seventh Circuit found in *Teed v. Thomas & Betts Power Solutions, LLC*, "there is no good reason to reject successor liability in this [FLSA] case – the default rule in suits to enforce federal labor or employment

---

[3] In *Teed v. Thomas & Betts Power Solutions, LLC*, Judge Posner, writing for the Court of Appeals for the Seventh Circuit, made a case for the ongoing vitality of the common law successorship standard and for its application to claims under the FLSA:

> The idea behind having a distinct federal standard applicable to federal labor and employment statutes is that these statutes are intended either to foster labor peace, as in the National Labor Relations Act, or to protect workers' rights, as in Title VII, and that in either type of case the imposition of successor liability will often be necessary to achieve the statutory goals because the workers will often be unable to head off a corporate sale by their employer aimed at extinguishing the employer's liability to them. This logic extends to suits to enforce the Fair Labor Standards Act. "The FLSA was passed to protect workers' standards of living through the regulation of working conditions. 29 U.S.C. § 202. That fundamental purpose is as fully deserving of protection as the labor peace, anti-discrimination, and worker security policies underlying the NLRA, Title VII, 42 U.S.C. § 1981, ERISA, and MPPAA." *Steinbach v. Hubbard*, 51 F.3d 843, 845 (9th Cir.1995). In the absence of successor liability, a violator of the Act could escape liability, or at least make relief much more difficult to obtain, by selling its assets without an assumption of liabilities by the buyer (for such an assumption would reduce the purchase price by imposing a cost on the buyer) and then dissolving. And although it can be argued that imposing successor liability in such a case impedes the operation of the market in companies by increasing the cost to the buyer of a company that may have violated the FLSA, it's not a strong argument. The successor will have been compensated for bearing the liabilities by paying less for the assets it's buying; it will have paid less because the net value of the assets will have been diminished by the associated liabilities.

711 F. 3d 763, 765-67 (7th Cir. 2013). This pronouncement is well reasoned and directly applicable to the facts in this case.

laws." 711 F. 3d 763, 769 (7th Cir. 2013); *see also Steinbach v. Hubbard*, 51 F.3d 843 (9th Cir. 1995); *Hatfield v. A+ Nursetemps, Inc.,* 651 Fed.Appx. 901 (11th Cir. 2016). In each of these cases, courts have determined that the federal common law standard of successor liability under the FLSA is appropriate when there is a substantial continuity of business operations, the subsequent employer had notice of the potential liability, and the predecessor employer is unable to provide full relief to the undercompensated employees, which mimics the standard adopted by the Tenth Circuit. *See Trujillo,* 694 F.2d at 225 n.3.

Based on the foregoing, as well as the reasons articulated in Plaintiff's motion for order to show cause, the Court should apply the federal common law standard of successor liability in this case and find that Par 2 is a successor of Paragon Contractors.

Dated this 20th day of December, 2017.

Respectfully submitted,

Nicholas C. Geale, Solicitor of Labor
James E. Culp, Regional Solicitor
John Rainwater, Associate Regional Solicitor
Lydia Tzagoloff, Trial Attorney and Special
    Assistant United States Attorney
Alicia A.W. Truman, Trial Attorney

*/s/ Karen E. Bobela*
_____
Karen E. Bobela, Trial Attorney

United States Department of Labor
Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

I certify that a courtesy copy of the foregoing Supplemental Brief was served this 20th day of December 2017, through the Court's CM/ECF system:

Rick J. Sutherland
M. Christopher Moon
Jackson Lewis PLLC
222 South Main Street, Suite 500
Salt Lake City, UT 84101
Counsel for Defendants Brian Jessop and Paragon Contractors

R. Blake Hamilton
Durham Jones & Pinegar, P.C.
111 South Main Street, Suite 2400
Salt Lake City, Utah 84111

Jeffrey C. Matura, Arizona Bar No. 019893
Graif Barrett & Matura, P.C.
1850 North Central Avenue, Suite 500
Phoenix, Arizona 85004

Attorneys for Par 2 Contractors, LLC

/s/ *Karen E. Bobela*
Karen E. Bobela, Trial Attorney