MANNING CURTIS BRADSHAW
  & BEDNAR PLLC
David C. Castleberry, #11531
Mitch M. Longson, #15661
136 East South Temple, Suite 1300
Salt Lake City, Utah 84111
Telephone: (801) 363-5678
Facsimile: (801) 364-5678
dcastleberry@mc2b.com
mlongson@mc2b.com
*Attorneys for Court-Appointed Receiver Wayne Klein*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| MARTIN J. WALSH, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,<br><br>Plaintiff,<br>v.<br><br>PARAGON CONTRACTORS CORP.; JAMES JESSOP an individual; BRIAN JESSOP, an individual; and PAR 2 CONTRACTORS, LLC,<br><br>Defendants. | **RECEIVER'S MOTION FOR APPROVAL TO CONSUMMATE SETTLEMENT AGREEMENT WITH DON JESSOP AND TO CONCLUDE CONTEMPT PROCEEDINGS AGAINST DON JESSOP**<br><br>Civil No. 2:06-cv-00700-TC<br><br>District Judge Tena Campbell |

R. Wayne Klein, the Court-Appointed Receiver (the "Receiver") of Paragon Contractors Corp. ("Paragon"), Par 2 Contractors, LLC ("Par 2"), Citadel Management, LLC. ("Citadel") (together, the "Receivership Entities"), as well as the assets of R. Brian Jessop ("Brian Jessop") (collectively "Receivership Defendants"), hereby submits this motion to approve a proposed settlement agreement between the Receiver and Don Jessop ("Motion").

## I.     BACKGROUND

In a 2018 contempt order (ECF 209), Judge Nuffer found Par 2 to be a successor in interest to Paragon and ordered it joined as a defendant in this case. In so doing, Par 2 was made jointly liable for what became a $812,960.90 judgment entered by the Court in July 2019 (ECF 241). Don Jessop, as the sole owner of Par 2, was found in civil contempt of prior orders, as an agent of Par 2 (ECF 209).

The Court, among other things, took control of all assets of Par 2 on August 25, 2021, and appointed the Receiver (ECF 298). Upon later motion by the Receiver, Citadel was made a Receivership Entity on January 14, 2022 (ECF 328), and its assets were put under the authority of the Receiver to satisfy the judgment amount.

On December 21, 2021, the Receiver filed a motion for order to show cause why Don Jessop and others should not be held in civil contempt (ECF 315) for failing to comply with the Order Appointing Receiver (ECF 298). After Don Jessop's response and the Receiver's reply, the Court issued an order finding Don Jessop (and others) in contempt, ordering them to provide declarations to the Receiver and submit to depositions (ECF 355). As described in the Receiver's report and recommendations (ECF 361), Don Jessop provided substantial, useful information in his March 9, 2022, declaration and his March 15, 2022, deposition. However, questions remain about the disposition of 14 vehicles and the destination of funds he received from sales of vehicles owned by Par 2 and Citadel. The Court recently issued an order requiring Don Jessop to provide information about the dispositions of those vehicles and sales proceeds (ECF 369).[1]

---

[1] In conjunction with this Motion, the Receiver and Don Jessop will be filing a stipulated motion for an extension of time for Don Jessop to comply with the Court's contempt sanctions order (ECF

1

## II.     PROPOSED SETTLEMENT AGREEMENT

Following the deposition of Don Jessop, his counsel expressed a desire to reach a settlement whereby Don Jessop could be released from further obligations under the Order Appointing Receiver (ECF 298) and conclude contempt proceedings against Don Jessop. The Receiver subsequently negotiated a conditional settlement agreement with Don Jessop. The agreement is specifically conditioned on approval by the Court.

The key elements of the proposed agreement are:

1.      <u>Payment Amount</u>. Don Jessop will pay to the Receivership Estate $350,000 by April 8, 2022. One hundred thousand dollars ($100,000) of this amount has already been paid to the Receiver and is being held in reserve, pending court approval.

2.      <u>Releases</u>. The agreement, if approved, will release: (a) all claims against Don Jessop and his wife, Lydia Musser, (b) claims against most persons to whom Don Jessop transferred Receivership Assets, and (c) most claims relating to the fourteen vehicles and pieces of equipment owned by Par 2 and Citadel whose disposition has not yet been discovered.[2] The release includes the Receiver's agreement not to seek recovery of vehicles and equipment transferred to former employees of Par 2, relatives and friends of Don Jessop (other than Brian Jessop), and vehicle dealers who purchased vehicles.

---

369) during the time the Court is considering this Motion. If the Court grants this Motion, the Receiver's request for additional information and compensatory sanctions from Don Jessop will become moot.

[2] To the extent that any of these 14 vehicles were transferred to persons other than those specifically identified in the release language (such as family, former employees, and vehicle dealers), the vehicle transfers would not be released. Thus, transfers to Last Chance Ranch or Paragon would not be covered by the release. Transfers to Joseph Steed or any other agent of Last Chance Ranch are also specifically excluded.

3.  <u>Recoveries Excluded from the Settlement</u>. The proposed settlement with Don Jessop is a limited one; the agreement specifically reserves to the Receiver the right to continue the Receiver's efforts to identify, recover, and sell Receivership Assets that are not covered in the release described above. The Receivership Assets and potential recoveries that are not covered by the settlement agreement—and for which the Receiver may continue to seek recovery—include:

   a.  <u>Paragon Assets</u>. The release does not extend to any Receivership Assets of Paragon, or that Paragon or Brian Jessop transferred to others;[3]

   b.  <u>Brian Jessop Assets</u>. Any assets of Brian Jessop, as declared by the Order Appointing Receiver;[4]

   c.  <u>Joseph Steed, Last Chance Ranch</u>. As a result of the Receiver's own investigation and information provided by Don Jessop, the Receiver has identified approximately ten vehicles and pieces of equipment that once were owned by Par 2 or Citadel that were transferred to Joseph Steed or any agent of Last Chance Ranch. These Receivership Assets are excluded from the release given to Don Jessop and the Receiver continues to have the right to investigate these transfers and recover the values of improper transfers;[5]

   d.  <u>Recovered Vehicles</u>. The Receiver is in possession of two vehicles he previously recovered from transferees. The Receiver will liquidate those assets and retain

---

[3] In light of Brian Jessop's intransigence (as noted in ECF 365), the Receiver continues his independent investigation of the location or disposition of Paragon vehicles. On March 10, 2022, the Receiver issued subpoenas to seven transferees of Paragon vehicles, in an attempt to gain information about the transfers of these assets.

[4] The Receiver notes that Brian Jessop has filed a personal bankruptcy (#22-20668). There are unresolved issues regarding the extent to which assets owned by Brian Jessop when the Receivership was created on August 25, 2021 became and remain assets of the Receivership Estate or whether those assets will be administered under the Bankruptcy Code. Resolution of those issues is not required for evaluation of this Motion.

[5] The Receiver is taking the 30(b)(6) deposition of Last Chance Ranch on April 12, 2022. Counsel for Last Chance Ranch has stated that he expects that Joseph Steed will be the corporate representative at that deposition and that Mr. Steed will refuse to answer any questions based on a claim of privilege.

the proceeds;[6]

      e.    <u>Trailers Transferred to James Jessop</u>. The Receiver will retain rights to trailers that Paragon transferred to James Jessop and that the Court ordered turned over to the Receiver in December 2021 (ECF 312);

      f.    <u>Stolen Assets</u>. A caterpillar excavator was stolen from the Hildale warehouse on the night of September 2, 2021, after notice of the receivership was posted on the Hildale warehouse. The Receiver retains the right to investigate the removal of this equipment, recover it, and sell it—even if Don Jessop had a role in its removal;[7]

      g.    <u>Rick Sutherland Contempt Recoveries</u>. In connection with the Court's March 7, 2022 contempt order (ECF 355), the Court has ordered that it will require Rick Sutherland to reimburse certain fees of the Receiver and his counsel in bringing the contempt action. The settlement agreement with Don Jessop would release the Receiver's claim for contempt sanctions against Don Jessop, but not against Rick Sutherland;[8]

      h.    <u>Wells Fargo Contempt Recoveries</u>. A show cause motion brought by the Receiver against Wells Fargo Bank is pending (ECF 346). A tentative settlement agreement has been reached pursuant to which Wells Fargo will pay $16,000 to the Receivership Estate. This claim is not released by the settlement with Don Jessop.[9]

4.    <u>Cooperation by and Assistance of Don Jessop</u>. Don Jessop has agreed to "fully cooperate" and assist the Receiver in the Receiver's ongoing efforts to identify and recover Receivership Assets. This cooperation requires (a) responding fully, truthfully, and promptly to requests by the Receiver for information, (b) volunteering information that Don Jessop believes will be useful to the Receiver, (c) using his best efforts to obtain and deliver to the Receiver titles for vehicles to be retained by the Receiver, and (d) voluntarily appearing at any hearings or trials in connection with the Receiver's ongoing recovery efforts. The cooperation extends to

---

[6] The proceeds from the sales of these two vehicles are expected to be less than $5,000.
[7] In the settlement agreement, Don Jessop affirmatively represents that he has no knowledge of the removal of the excavator, who possesses it, or its location since the date the Receiver was appointed. This piece of equipment may be worth over $75,000.
[8] The Receiver is seeking payment of $8,813.64 in fees and costs from Mr. Sutherland (ECF 360).
[9] The Receiver intends to file a motion seeking approval of the settlement agreement with Wells Fargo when the settlement agreement is finalized.

investigation into assets Don Jessop transferred to Joseph Steed and Last Chance Ranch, trailers that Paragon transferred to James Jessop, the disposition of the 14 vehicles whose disposition has not been determined (in the event they were transferred to persons not covered by the releases in the Don Jessop settlement), the stolen Caterpillar excavator, and ongoing contempt proceedings.

5. **Representations by Don Jessop**. In the agreement, Don Jessop represents that he has no knowledge regarding the theft or current location of the Caterpillar excavator taken from the Hildale warehouse. He warrants that the information he has provided to the Receiver regarding possession and disposition of Receivership Assets is accurate. If those representations turn out to be false, if Don Jessop does not cooperate with the Receiver's ongoing efforts, or if Don Jessop provides assistance to others in hiding assets from the Receiver or interfering with the Receiver's work, the Receiver can void the releases of the settlement agreement while retaining the settlement amounts paid by Don Jessop. The Receiver believes this is a powerful incentive for Don Jessop to comply with his obligations under the proposed agreement.

### III.   ANALYSIS

The settlement agreement with Don Jessop reflects a decision to forego the potential of a greater recovery from Don Jessop and those to whom he transferred assets in favor of an immediate cash payment and cessation of one line of investigation and litigation. The Department of Labor has expressed its intent to oppose this motion within the time prescribed by DUCivR 7-1. The Receiver asks the Court not to rule on this Motion until the Department of Labor has submitted its comments.

**A.**   **Legal Standard**

"In evaluating proposed settlements in equity receiverships . . . the Court should inquire

whether the action to be taken is 'in the best interest of the receivership.'" *SEC v. Am. Pension Servs., Inc.*, 2015 WL 12860498, at *10 (D. Utah Dec. 23, 2015) (quoting *SEC v. Capital Consultants, LLC*, 2002 WL 31470399 (D. Ore. March 8, 2002)).

For the reasons detailed below, the Receiver believes that the settlement agreement is in the best interest of the Receivership Estate and recommends approval by the Court. The settlement agreement between the Receiver and Don Jessop was negotiated at arm's length and in good faith by the Receiver and Don Jessop. It will avoid the expenses, delay, and inherent risks of further litigation, and will result in the immediate collection of a sum certain for the benefit of the Receivership Estate. These funds can be used for a prompt distribution to victims of the child labor violations.

**B.**      **The Receiver's Reasons for Recommending This Proposed Settlement**

The Receiver does not lightly undertake this request to approve a settlement that the Department of Labor opposes. The Department of Labor has spent 15 years seeking recovery for the child labor violations and attempting to enforce labor laws and the policies underlying those laws against Receivership Defendants. The Receiver recognizes that the Department may have knowledge or a perspective that outweighs the Receiver's perspective. It also may be that important policy considerations warrant rejection of this settlement. Notwithstanding the Department's expected opposition, the Receiver's reasons for recommending this settlement are:

1.      Expected Ability to Satisfy the Judgment. As a result of the Court's contempt rulings (along with information previously obtained from the Receiver's own investigation and information recently obtained from Don Jessop), the Receiver—for the first time since his appointment—now expects to recover the full amount of the back wage judgment. From the

Receiver's perspective, that expectation changes the focus of the Receiver's work from "Where are certain assets?" to "Who should be required to fund the balance of the judgment and in what amounts?"

    2.    <u>What Amounts Should be Recovered</u>? The Receiver recognizes that these back wages have been unpaid for ten years and that this long period of time has devalued the benefit of the unpaid back wages that were ordered by the Court. This is a reason post-judgment interest would be appropriate to collect.[10] Moreover, the possible imposition of civil money penalties in the separate administrative enforcement proceeding by the Department of Labor reflects important public policy that sanctions beyond belated payments of back wages might be appropriate. This raises the question of what the Receiver's priorities should be for collecting the judgment amount, post-judgment interest, and civil money penalties. This settlement reflects the Receiver's emphasis on collecting the back wage amount.[11]

    3.    <u>Equity Considerations</u>. Federal receiverships operate in equity.[12] This is appropriate and necessary as each case has unique considerations. In performing his role, the Receiver must weigh equities, including asking questions such as: "Is it wise to enter into a settlement that releases assets that otherwise might be available to satisfy the judgment?" "Is it

---

[10] Post-judgment interest may be recoverable under 28 U.S.C. § 1961. The Order Appointing Receiver did not specifically address whether post-judgment interest should be collected. However, if civil money penalties are imposed, funds recovered by the Receiver beyond the judgment amount would be paid to the Department of Labor. The Department could determine whether to allocate those extra amounts to post-judgment interest or civil money penalties.

[11] The Receiver lacks authority to release Don Jessop from liability for any civil money penalties. However, under the proposed agreement, the Receiver agrees not to seek any amount of the civil money penalties assessed against Don Jessop or his wife.

[12] *See Wing v. Horne*, 2009 WL 2929389, at *3 (D. Utah Sept. 8, 2009) (discussing challenges faced by a receiver).

equitable for the Receiver to require one holder of Receivership Assets to bear full responsibility for paying the remaining judgment just because those assets are most easily recoverable?" "Is it equitable to impose on a non-defendant all the burden of satisfying the remaining judgment amount, thereby substantially reducing or eliminating responsibilities of another defendant—including assets the other defendant controls or assets the other defendant has distributed to others, perhaps to his own benefit?"[13] "Does equity call for the Receiver to deem Don Jessop's recent cooperation, apparent (belated) truthfulness, and willingness to settle as mitigating factors to be evaluated in determining the appropriate course to pursue?"

These are not questions capable of uniform consensus or mathematical calculation. Without answering these questions individually herein, the Receiver notes that these are factors he has considered in negotiating the terms of the settlement with Don Jessop and in recommending this settlement to the Court.

4. <u>Immediacy</u>. One advantage of the proposed settlement is the immediacy of receipt of the funds. The child labor violations occurred in 2012. Those child laborers have been waiting ten years for payment of back wages. Some or many of them might now be in college or living on their own. Receipt of back wages may be of greater value to them now than in later years. By delivering a large cash payment to the back wage fund immediately (combined with the significant distribution paid in March 2022), a large amount is now available for distribution to the child laborers. The immediacy of this recovery could be viewed, however, as giving up a

---

[13] By posing this question, the Receiver is not intending to minimize Don Jessop's misconduct. Don Jessop controlled Par 2 and Citadel. He dissipated assets to prevent them from being used to satisfy the judgment. He has repeatedly been found in contempt for not obeying court orders.

potentially greater recovery in the future, which greater amount might satisfy more of the anticipated civil money penalties.

5. <u>Efficiency</u>. The recovery of $350,000 pursuant to a settlement is certainly more efficient than the alternative option available to the Receiver: (a) identifying the transferees of each vehicle and piece of equipment once owned by Par 2 or Citadel, (b) obtaining information about the terms of each those sales, including whether the transfer was for "reasonably equivalent value,"[14] (c) identifying the locations of fraudulently transferred vehicles, (d) filing turnover motions against each improper transferee, to recover the vehicles or their equivalent values, and (e) seizing vehicles or collecting amounts based on turnover orders. This process is available and important if easier recovery methods are not found. Nevertheless, the alternative recovery process will require significant effort by the Receiver, his counsel, and the Court.

With that said, the Receiver does not know whether the alternative method—recovering all Par 2 and Citadel vehicles (or their proceeds)—would result in a higher net recovery than is being offered through this proposed settlement. The Receiver does not think the answer to this question so heavily favors continued efforts to identify and recover individual vehicles that a settlement providing immediate payment of a significant amount is clearly inferior.

6. <u>Unknown Value, Location of Assets</u>. As is shown by the Court's recent order requiring Don Jessop to identify the location of 14 vehicles whose disposition has not been disclosed (ECF 369), the locations and dispositions of these vehicles remain unknown notwithstanding Don Jessop's March 9, 2022 declaration and March 15, 2022 deposition

---

[14] This process may involve the ongoing forensic accounting effort, issuing subpoenas to transferees, issuing subpoenas to transferees' banks, and taking depositions relating to each vehicle.

testimony. To the extent that those vehicles were transferred to former employees, family members, or vehicle dealers, this settlement would release the Receiver's claims to those vehicles. To the extent those vehicles were transferred to Joseph Steed or Last Chance Ranch, are in the possession or control of Brian Jessop, or were transferred to others not covered by the release, they are still Receivership Assets. If the Court declines to approve the settlement agreement, the Receiver will endeavor to determine the disposition of those vehicles, but that effort may prove unsuccessful. Records from state motor vehicle offices have not identified any transfers of titles of these vehicles. Don Jessop testified that Par 2 records have been discarded, eliminating an avenue for determining their disposition. It is likely some of these vehicles were abandoned, as being beyond their useful life. Thus, there are reasons to question the extent to which efforts to recover these 14 vehicles will materially contribute to the amount needed to satisfy the judgment.

## IV.   CONCLUSION

For the foregoing reasons, the Receiver moves the Court to approve the proposed settlement agreement with Don Jessop, which will include termination of Don Jessop's portion of the Court's pending contempt proceedings.

DATED this 5th day of April 2022.

>   MANNING CURTIS BRADSHAW
>   & BEDNAR PLLC
>   David C. Castleberry, #11531
>   Mitch M. Longson, #15661
>
>   /s/ Mitch M. Longson
>   *Attorneys for Court-Appointed*
>   *Receiver Wayne Klein*

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the above **RECEIVER'S MOTION FOR APPROVAL TO CONSUMMATE SETTLEMENT AGREEMENT WITH DON JESSOP AND TO CONCLUDE CONTEMPT PROCEEDINGS AGAINST DON JESSOP** was filed with the Court on this 5th day of April 2022 and served via ECF on all parties who have requested notice in this case.

/s/ Mitch M. Longson