IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MARTIN J. WALSH, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,<br><br>Plaintiff,<br><br>vs.<br><br>PARAGON CONTRACTORS CORP.; JAMES JESSOP an individual; BRIAN JESSOP, an individual; and PAR 2 CONTRACTORS, LLC,<br><br>Defendant. | ORDER<br>AND<br>MEMORANDUM DECISION<br><br>Case No. 2:06-cv-700-TC |

In this contempt matter, contemnor Brian Jessop argues that when he filed for bankruptcy on March 4, 2022, the automatic stay barred further contempt proceedings against him. (See Brian Jessop's Supplemental Mem. in Response to Am. Order to Show Cause, ECF No. 381 ("Jessop Supplemental Memorandum".) As the court held on March 7, 2022 (see ECF No. 355), and as re-affirmed in this order, the automatic stay in bankruptcy court does not allow Mr. Jessop to avoid obligations arising out of his contempt in this court.

## BACKGROUND

This contempt proceeding began in 2015, when the Department of Labor filed a motion for order to show cause why Brian Jessop and Paragon Contractors should not be held in contempt for their 2012 violation of the court's November 29, 2007 Permanent Injunction (ECF

1

No. 26) barring illegal use of child labor. (See ECF No. 30.) In 2016, after a multi-day evidentiary hearing and briefing, the court held Mr. Jessop and Paragon (the Defendants) in contempt. As part of the contempt proceedings, the court ordered the Defendants to pay approximately $1 million in compensatory sanctions to child laborers for back wages (a contempt sanction the Tenth Circuit affirmed in 2020[1]). Approximately $812,960 remains unpaid.

On August 25, 2021, the court issued its Order Appointing Receiver (ECF No. 298) (the "Receivership Order"). The court created the equity receivership after five years of unsuccessful efforts by the Department of Labor and the court to get Mr. Jessop and others, including his former company Paragon Contractors, to comply with the court's previous contempt orders, including payment of the remaining sanctions.

In December 2021, the Receiver filed a Motion for Order to Show Cause (ECF No. 315) why Mr. Jessop and others should not be held in contempt for violating the Receivership Order. After briefing, the court scheduled a hearing for March 4, 2022.

On the eve of the hearing, Mr. Jessop notified the court that he had filed a petition for bankruptcy under Chapter 7 of the bankruptcy code. Citing the automatic bankruptcy stay, Mr. Jessop objected to the proceedings. Although noting his objection, the court determined that the automatic stay does not bar further contempt proceedings against Mr. Jessop and went forward with the hearing.

On March 7, 2022, the court found Mr. Jessop (and two other individuals) in contempt for violating the Receivership Order. (See Mar. 7, 2022 Order on Receiver's Mot. for Order to Show Cause Why Brian Jessop, Don Jessop, and Rick J. Sutherland Should Not Be Held in Civil

---

[1] See Scalia v. Paragon Contractors Corp., 957 F.3d 1156 (10th Cir. 2020).

Contempt, ECF No. 355 ("March 7th Contempt Order").)  In the March 7th Contempt Order, the court addressed Mr. Jessop's objection:

> Courts have authority to enforce their orders in civil contempt proceedings against bankruptcy debtors.  In ClearOne Communications, Inc. v. Bowers, the Tenth Circuit found that the district court did not violate the automatic stay during contempt proceedings when it held the debtor jointly and severally liable for a party's fees and costs incurred while attempting to enforce a court order.  509 F. App'x 798, 803 (10th Cir. 2013).  The appellate court also wrote that although the district court assessed the award after the bankruptcy court lifted the stay, the district court may have been allowed to do so even during the stay.  Id.  It also observed that "Congress could not have meant for [the] bankruptcy stay to strip the federal courts of their inherent power to enforce their orders in civil contempt proceedings."  Id. (citing SEC v. Bilzerian, 131 F. Supp. 2d 10, 14–15 (D.D.C. 2001), aff'd, 75 F. App'x 3 (D.C. Cir. 2003)).
>
> The court issued the Order in August 2021 [Receivership Order] to enforce its earlier finding of contempt against Brian Jessop.  Now the court faces another layer of contempt allegations against him.  These proceedings are part of the court's inherent power to enforce its orders.  Brian Jessop is not exempt.  "[T]he bankruptcy process cannot be invoked to immunize contumacious behavior."  Am. Online, Inc. v. CN Prods., Inc., 272 B.R. 879, 881 (E.D. Va. 2002), quoted in ClearOne, 509 F. App'x at 803.

(Id. at 6–7.)

Although the Receiver asked the court to put Mr. Jessop in jail until he purged his contempt, the court gave Mr. Jessop another opportunity to avoid being placed in custody:

> Brian Jessop is in violation of the [Receivership] Order for failing to satisfy his obligations, as detailed by the Receiver in the record.  He is hereby ordered to submit, in writing, responsive information to the Receiver no later than Wednesday, March 9, 2022.  He must then appear for a deposition to be taken by counsel for the Receiver.  If he does not comply in full and cannot establish good cause for failure to comply, the court will consider placing him in custody until he satisfies the obligations the Receiver has identified in the record here.

(Id. at 9.)  The Receiver reported that although Mr. Jessop submitted a declaration and attended the deposition, Mr. Jessop did not comply in good faith.[2]  (See Receiver's Report and

---

[2] Although Mr. Jessop does not challenge the court's finding of contempt in the March 7th Contempt Order, it appears that he contends, at least in part, that he is not in violation of the March 7th Contempt Order because he did as the court ordered, that is, that he file a written

3

Recommendations Regarding Brian Jessop and Don Jessop's Compliance with Order Finding Contempt, ECF No. 361.)

On April 26, 2022, the court held another hearing to determine whether to place Mr. Jessop in custody until he purges his contempt. His counsel once again raised the argument about the automatic bankruptcy stay. In fact, he contended not only that his bankruptcy filing stayed these proceedings against him but also that he is no longer a party to these contempt proceedings. (See Jessop Supplemental Mem. at 3.) The court noted that it had already addressed the automatic stay issue in the March 7th Contempt Order and reiterated that Brian Jessop is still subject to the requirements of all the court's orders relating to his contempt, including the Receivership Order, despite filing for bankruptcy. Nevertheless, the court further explains its ruling.

## ANALYSIS

In the March 7th Contempt Order, the court noted that "[t]he Receiver has a discrete role in this case: to collect on a contempt judgment entered by the Court." (March 7th Contempt Order at 2.) The court also relied in part on the Tenth Circuit's decision in ClearOne Communications, Inc. v. Bowers, 509 F. App'x 798 (10th Cir. 2013), to support the conclusion that the bankruptcy stay does not bar enforcement of the contempt judgment against Mr. Jessop.

> In ClearOne Communications, Inc. v. Bowers, the Tenth Circuit found that the district court did not violate the automatic stay during contempt proceedings when it held the debtor jointly and severally liable for a party's fees and costs incurred while attempting to enforce a court order. 509 F. App'x 798, 803 (10th Cir. 2013). The appellate court also wrote that although the district court assessed the

---

response and attend a deposition. It follows, he suggests, that strict compliance with that Order forecloses his incarceration. To be clear, the contempt issue does not relate to whether Mr. Jessop complied with the obligations set forth on page 9 of the March 7th Contempt Order. Those obligations were imposed in lieu of incarceration in order to give Mr. Jessop another chance to purge himself of contempt before being placed in custody.

4

award after the bankruptcy court lifted the stay, the district court may have been allowed to do so even during the stay. Id.

(March 7th Contempt Order at 6.)

The appellate court in ClearOne cited to numerous decisions in other jurisdictions that stand for the proposition that a contemnor may not avoid contempt obligations by filing for bankruptcy.³ "'[T]he bankruptcy process cannot be invoked to immunize contumacious behavior.'" ClearOne, 509 F. App'x at 803 (quoting Am. Online, Inc. v. CN Prods., Inc., 272 B.R. 879, 881 (E.D. Va. 2002)). The ClearOne court also noted that "Congress could not have meant for [the] bankruptcy stay to strip the federal courts of their inherent power to enforce their orders in civil contempt proceedings." Id. (citing SEC v. Bilzerian, 131 F. Supp. 2d 10, 14–15 (D.D.C. 2001), aff'd, 75 F. App'x 3 (D.C. Cir. 2003)).

Mr. Jessop too relies on ClearOne, but he points to the appellate court's language concerning "collection of a judgment." There, the Tenth Circuit noted that "it may be that the district court could have brought [the contemnor] to account for his contempt [by assessing costs] even while the automatic stay was in place so long as its 'main purpose [was] to punish a contemnor and uphold the dignity of the court' rather than to effect the collection of a judgment." Id. (quoting Kukui Gardens Corp. v. Holco Capital Grp., Inc., 675 F. Supp. 2d 1016, 1026–27 (D. Haw. 2009)). To Mr. Jessop, his contempt judgment is the equivalent of a judgment that is not meant to "'punish a contemnor and uphold the dignity of the court.'" (See Jessop Supplemental Mem. at 8–9.)

---

³ Mr. Jessop takes issue with the Receiver's conclusion that he filed for bankruptcy simply to avoid his obligations in this court. Mr. Jessop (whose assets are part of the Receivership Order) says he filed for bankruptcy to protect his ability to provide for his family. The court does not express an opinion about Mr. Jessop's motivations or the appropriateness of his bankruptcy petition. That issue does not bear on the question of whether the stay freezes this court's authority to enforce its orders.

Courts have the inherent authority to "manage their own affairs," including "[t]he power to punish for contempts." Chambers v. NASCO, Inc., 501 U.S. 32, 44, 49 (1991).

> A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as –
> (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice; (2) Misbehavior of any of its officers in their official transactions; (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

18 U.S.C. § 401.

In civil contempt proceedings, "[t]he offending party is punished, but a critical feature of civil contempt is that 'the punishment is remedial.'" Law v. NCAA, 134 F.3d 1438, 1443 (10th Cir. 1998) (quoting Hicks v. Feiock, 485 U.S. 624, 631 (1988)). The remedy may include a civil fine, which is "by definition either compensatory or coercive." Id. "Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes; to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." United States v. United Mine Workers of Am., 330 U.S. 258, 303–04 (1947).

The compensatory sanction of $1 million, which arose out of Mr. Jessop's contempt and the resulting harm to child laborers, is the product of contempt proceedings necessarily designed to uphold the dignity of the court. "[I]f the purpose of the contempt order is to uphold the dignity of the court, the civil contempt order may be excepted from the automatic stay of § 362(a)." Kukui Gardens, 675 F. Supp. 2d at 1027, cited in ClearOne, 509 F. App'x at 803.

The fact that the contempt judgment imposes a financial obligation on Mr. Jessop, as well as his fellow contemnors, does not immunize Mr. Jessop from the Receiver's efforts to carry out the court's mandate in the Receivership Order. The court ordered payment of $1 million as a sanction for violation of the Permanent Injunction. "Violation of a permanent injunction has

traditionally sounded in contempt, and no reason exists to believe Congress intended to withhold the traditional remedy of compensation to those [individuals] victimized by the defendants' violations of the Permanent Injunction." FTC v. Kuykendall, 371 F.3d 745, 764 (10th Cir. 2004) (allowing federal agency in contempt action, to "seek compensatory relief for injured consumers, none of whom [was] a party to the Permanent Injunction.").

The decision in US Sprint Communications Co. v. Buscher, 89 B.R. 154 (D. Kan. 1988), contains a helpful discussion of the issue. There, the court addressed whether the bankruptcy stay barred its authority to sentence the contemnor on a civil contempt citation after he violated direct orders of that court. In doing so, the court reviewed decisions finding that a civil contempt judgment was not dischargeable in bankruptcy and the court found the reasoning in those decisions persuasive.

> [In re Marini, 28 B.R. 262 (Bankr. E.D.N.Y. 1983)] spelled out the distinction between a contempt citation intended to enforce payment of a judgment and one intended to uphold the dignity of the court. [In re Gedeon, 31 B.R. 942 (Bankr. D. Colo. 1983)] pointed out that a contempt citation issued to coerce a party to obey a court order is an order imposed to uphold the dignity of the court. This is so even if the contempt judgment is payable to the opposing party. [In re Corbly, 61 B.R. 851 (Bankr. D.S.D. 1986)] echoed this ruling. [Guariglia v. Community Nat'l Bank & Trust Co., 382 F. Supp. 758 (E.D.N.Y. 1974)] stood for the proposition that a judgment imposed to uphold the dignity of the court could withstand a bankruptcy filing, while a contempt citation used simply to collect a judgment owed the creditor was subject to the limitations of the bankruptcy code.

Id. at 156–57.

Ultimately, after reviewing those cases and the automatic stay provision in the bankruptcy code, the Buscher court held that the automatic stay did not apply. "At first glance, § 362(a)(1) [the automatic stay provision in the bankruptcy code] does seem to stay this court's sentencing power because it halts any judicial proceeding. But this is not just any judicial proceeding. This court has already determined that defendant violated two direct orders of this

7

court." Id. at 156 (emphasis added). The court went on to explain the importance of its ability to go forward with contempt proceedings.

> It is within this court's inherent power to take whatever steps necessary to ensure those persons within its power comply with its orders. The court cannot conceive that Congress intended to strip the court of this power, and instead permit a party to blatantly violate direct orders of the court and then seek shelter from a bankruptcy judge. If this were so, the court's orders could be rendered almost meaningless. The court must retain the ability to compel compliance with its orders; a party seeking relief from his creditors is not free to run rampant in flagrant disregard of the powers of the court. <u>A civil contempt judgment is one effective method of coercing compliance and of "upholding the dignity of the court."</u>

Id. (emphasis added).

In the words of the Buscher court, "this is not just any judicial proceeding." The court imposed the $1 million compensatory sanction in response to Mr. Jessop's and others' contemptuous violation of the Permanent Injunction. After years of wrangling, the court issued the Receivership Order to enforce its initial contempt order and sanctions. Mr. Jessop's subsequent bankruptcy filing does not foreclose the court's authority to "uphold the dignity of the court." Accordingly, the court finds that he must comply with the mandate of the Receivership Order.

DATED this 26th day of April, 2022.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge