IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MARTIN J. WALSH, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,<br><br>Plaintiff,<br><br>vs.<br><br>PARAGON CONTRACTORS CORPORATION, JAMES JESSOP, BRIAN JESSOP, and PAR 2 CONTRACTORS, LLC,<br><br>Defendants. | ORDER APPROVING RECEIVER'S SETTLEMENT AGREEMENT WITH DON JESSOP<br><br><br>Case No. 2:06-cv-700-TC |

On April 5, 2022, court-appointed Receiver R. Wayne Klein filed a motion seeking permission to consummate his settlement agreement with contemnor Don Jessop ("Motion"[1]). No interested party has filed an opposition to the Motion,[2] and the time for doing so has passed. For the reasons set forth below, the court grants the Receiver's request.

---

[1] ECF No. 375.
[2] At the time the Receiver filed the Motion, Secretary of Labor Martin J. Walsh expressed his intention to oppose the motion. (See Motion at 5.) But on May 12, 2022, the Secretary notified the court that he no longer opposes the Receiver's request for approval of the settlement. (ECF No. 401.)

1

**BACKGROUND**

In June 2016, the court held Defendants Paragon Contractors ("Paragon") and Brian Jessop in contempt for their violation of the court's 2007 Permanent Injunction barring their illegal use of child labor. (See June 1, 2016 Findings of Fact & Conclusions of Law, ECF No. 99.) The court imposed contempt sanctions, which obligated the contemnors to pay $1,013,000 in back wages to the child laborers. (See July 2, 2019 Findings of Fact & Conclusions of Law Re: Calculation of Back Wages, ECF No. 241.) The contemnors paid $200,000 toward the balance, but approximately $813,000 in back wages remains unpaid.

In September 2018, after Brian Jessop and others secretly dismantled Paragon to avoid Paragon's contempt obligations, the court found that newly formed Par 2 Contractors was simply a continuance of Paragon. (See Sept. 10, 2018 Mem. Decision Including Findings of Fact & Conclusion of Law & Contempt Order at 35, ECF No. 209.) The court joined Par 2 as a Defendant. (Id.) Don Jessop was an agent of Par 2.

After years of unsuccessful efforts to get Paragon, Par 2, and Brian Jessop to pay the $813,000 the court issued its August 25, 2021 Order Appointing Receiver[3] ("Receivership Order"), in which the court appointed Mr. Klein to recover assets needed to pay the outstanding back wage balance to the child laborers. The Receivership Order imposed disclosure obligations on, among others, Par 2 agent Don Jessop. Mr. Klein began his work, but after facing more obstacles, he filed a Motion for Order to Show Cause[4] ("Motion for OSC"), in which he sought a finding of contempt against Don Jessop, Brian Jessop, and attorney Rick Sutherland for their

---

[3] ECF No. 298.
[4] ECF No. 315.

failure to comply with the Receivership Order.

On March 7, 2022, the court granted the Motion for OSC.  (See Order on Receiver's Motion for Order to Show Cause Why Brian Jessop, Don Jessop, and Rick J. Sutherland Should Not Be Held in Civil Contempt[5] ("Contempt Order").)  The Contempt Order required, among other things, that Don Jessop submit a written response to the Receiver's request for information and then appear for a deposition.  The court also ordered Mr. Jessop[6] to pay a portion of the Receiver's fees and costs associated with the Motion for OSC.  According to the Receiver, Mr. Jessop "provided substantial, useful information" in his declaration and deposition.  (Motion at 1.)

After the deposition, Mr. Jessop expressed a desire to reach an agreement releasing him from further obligations under the Receivership Order and concluding contempt proceedings against him.  He and the Receiver negotiated a settlement, specifically conditioned on approval by the court.  The Receiver now moves for that approval.

## THE PROPOSED SETTLEMENT

In the Motion, the Receiver describes the key elements of the proposed agreement.  To begin, Mr. Jessop will pay $350,000 to the Receivership Estate.  According to the Receiver, Mr. Jessop has already paid $100,000, which is being held in reserve, pending court approval of the settlement.  Mr. Jessop has also agreed to fully cooperate and assist the Receiver in the Receiver's ongoing efforts to identify and recover other Receivership Assets.[7]  In exchange, the

---

[5] ECF No. 355.
[6] By "Mr. Jessop," the court means Don Jessop, not Brian Jessop.
[7] "This cooperation requires (a) responding fully, truthfully, and promptly to requests by the Receiver for information, (b) volunteering information that Don Jessop believes will be useful to the Receiver, (c) using his best efforts to obtain and deliver to the Receiver titles for vehicles to be retained by the Receiver, and (d) voluntarily appearing at any hearings or trials in connection with the Receiver's ongoing recovery efforts. The cooperation extends to investigation into

3

Receiver will release

> all claims against Don Jessop and his wife, Lydia Musser, (b) claims against most persons to whom Don Jessop transferred Receivership Assets, and (c) most claims relating to the fourteen vehicles and pieces of equipment owned by Par 2 and Citadel whose disposition has not yet been discovered. The release includes the Receiver's agreement not to seek recovery of vehicles and equipment transferred to former employees of Par 2, relatives and friends of Don Jessop (other than Brian Jessop), and vehicle dealers who purchased vehicles.

(Id. at 2.)

The agreement is conditioned on Mr. Jessop's full cooperation. If Mr. Jessop's representations to the Receiver are false, if he does not continue to cooperate, or if he interferes with the Receiver's efforts to collect assets from other sources, "the Receiver can void the releases of the settlement agreement while retaining the settlement amounts paid by Don Jessop." (Id. at 5.) As the Receiver points out, "this is a powerful incentive for Don Jessop to comply with his obligations under the proposed agreement." (Id.)

## BEST INTERESTS OF THE RECEIVERSHIP ESTATE

The court must determine whether the proposed settlement is fair and equitable and in the best interests of the Receivership Estate. SEC v. Stanford Int'l Bank, Ltd., 927 F.3d 830, 840 (5th Cir. 2019); SEC v. Am. Pension Servs., Inc., No. 2:14-cv-00309-RJS-DBP, 2015 WL 12860498, at *10 (D. Utah Dec. 23, 2015). Give the totality of circumstances, the court finds the settlement is a fair compromise.

Efficiency and immediacy are two good reasons to approve the settlement. In part because of information Mr. Jessop has provided and because of his offer of $350,000, the

---

assets Don Jessop transferred to Joseph Steed and Last Chance Ranch, trailers that Paragon transferred to James Jessop, the disposition of the 14 vehicles whose disposition has not been determined (in the event they were transferred to persons not covered by the releases in the Don Jessop settlement), the stolen Caterpillar excavator, and ongoing contempt proceedings." (Motion at 4–5.)

4

Receiver "now expects to recover the full amount of the back wage judgment" from various sources. (Motion at 6.) Putting $350,000 toward the remaining $813,000 contempt judgment is a significant step forward. And, as the Receiver notes, "[o]ne advantage of the proposed settlement is the immediacy of receipt of the funds. The child labor violations occurred in 2012. Those child laborers have been waiting ten years for payment of back wages." (Id. at 8.) The considerable passage of time has devalued the back wages award. Requiring the Receiver to obtain the money from other sources (a time-consuming and laborious process) will simply devalue the wages further and increase costs to the Receivership Estate. (See id. at 9 (listing efficiency concerns).) Moreover, the Receiver cannot confidently say that pursuing assets without the settlement will result in a higher net recovery.

The terms of the settlement agreement do not foreclose the Receiver's ability to pursue assets from other contemnors and transferees. (See id. at 3–4 (listing additional sources of funds).) The $350,000 would supplement, rather than substitute, avenues of recovery.

The ultimate purpose of these contempt proceedings and the Receivership is to compensate the victims of the child labor violations for the work they did. Certainly, the contempt of Mr. Jessop and others has made recovery very difficult. That said, Mr. Jessop's offer of $350,000 would cover approximately one-third of the remaining unpaid back wages and is an effort to purge his contempt. Moreover, the settlement would reduce costs to the Receivership Estate and allow the Receiver to redouble his efforts to recover other assets.

The court has reviewed the Motion, the circumstances under which the contempt and subsequent settlement arose, and the terms of the settlement. An arm's length negotiation between the Receiver and Mr. Jessop resulted in a good faith settlement that "will avoid the expenses, delay, and inherent risks of further litigation, and will result in the immediate

5

collection of a sum certain for the benefit of the Receivership Estate … and prompt distribution to victims of the child labor violations." (Id. at 6.) Considering the competing equitable and practical concerns, the court finds, under all the circumstances, that the Receiver's proposed settlement with Don Jessop is in the best interest of the Receivership Estate.

## **ORDER**

For good cause shown, the Receiver's Motion for Approval to Consummate Settlement Agreement with Don Jessop and to Conclude Contempt Proceedings Against Don Jessop (ECF No. 375) is GRANTED. Subject to Don Jessop's compliance with the settlement agreement, the court hereby releases Don Jessop from further obligations under the August 25, 2021 Order Appointing Receiver (ECF No. 298). Additionally, the court finds that, upon satisfaction of obligations under the settlement agreement (including payment of the $350,000), Don Jessop will have purged his civil contempt arising out of his failure to comply with the Order Appointing Receiver.

SO ORDERED this 18th day of May, 2022.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge